# In the United States Court of Federal Claims

**No. 24-1313C**
**July 30, 2026**

* * * * * * * * * * * * * * * * * * * *

**SIEMENS GOVERNMENT TECHNOLOGIES, INC.,**

**Plaintiff,**

**v.**

**UNITED STATES,**

**Defendant.**

* * * * * * * * * * * * * * * * * * * *

**Robert S. Nichols**, Nichols Law LLP, Washington, DC, for plaintiff. With him was **Michael Bhargava**, Nichols Law LLP, Washington, DC.

**Thomas J. Adair**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. With him were **Corinne A. Niosi**, Assistant Director, Commercial Litigation Branch, **Patricia M. McCarthy**, Director, Commercial Litigation Branch, and **Brett A. Shumate**, Assistant Attorney General, United States Department of Justice, Washington, DC.

## O P I N I O N

**HORN, J.**

The current Motion for Reconsideration addresses the December 31, 2025 Opinion and Order issued by the Judge previously assigned to the above captioned and numbered case, which denied defendant's motion to dismiss Counts II and III of the Second Amended Complaint filed by Siemens Government Technologies, Inc. (Siemens), and which deferred consideration of Count I of Siemens' Second Amended Complaint. See Siemens Gov't Techs., Inc. v. United States, No. 24-1313, 2025 WL 3774760, at *1 (Fed. Cl. Dec. 31, 2025) (Siemens III).[1] As discussed more fully below, in his December 31,

[1] The December 31, 2025 Opinion and Order, issued by the Judge previously assigned to the above captioned and numbered case, is denoted Siemens III because, as discussed more fully below, Siemens has filed multiple other cases in the United States Court of Federal Claims with similar factual and legal issues as in the above captioned and numbered case. Two of the other cases were filed by Siemens prior to Siemens filing Siemens III on August 26, 2024, and one case was filed by Siemens after the current Siemens III case. See, e.g., Siemens Gov't Techs., Inc. v. United States, No. 22-1870,

2025 Opinion and Order, the Judge previously assigned to the above captioned and numbered case ruled that the Federal Acquisition Streamlining Act (FASA) of 1994, 10 U.S.C. § 3406(f) (2024),[2] which can limit the jurisdiction of the United States Court of Federal Claims over certain bid protests "in connection with the issuance or proposed issuance of a task or delivery order," does not bar jurisdiction in this court regarding Counts II or III of Siemens' Second Amended Complaint in the above captioned and numbered case. See Siemens III, No. 24-1313, 2025 WL 3774760, at *4. The Judge previously assigned to the above captioned and numbered case, however, deferred ruling on defendant's motion to dismiss as to Count I of Siemens' Second Amended Complaint until an oral argument could be heard on the supplemental motion to dismiss filed by

177 Fed. Cl. 165 (2025) (Siemens I); Siemens Gov't Techs., Inc. v. United States, No. 22-698, 176 Fed. Cl. 450 (2025) (Siemens II); Siemens Gov't Techs., Inc. v. United States, No. 26-282, 181 Fed. Cl. 506 (2026) (Siemens IV).

[2] The court notes that there also is a parallel FASA task order bar in Title 41 of the United States Code, which applies to civilian agencies. See 41 U.S.C. § 4106(f) (2024). The United States Court of Appeals for the Federal Circuit has stated that "[t]he text of the two provisions [10 U.S.C. § 3406(f) and 41 U.S.C. § 4106(f)] is similar, except for the different monetary thresholds over which task order protests may be heard by the Comptroller General." Percipient.ai, Inc. v. United States, 104 F.4th 839, 846 n.2 (Fed. Cir. 2024) (alterations added). The United States Court of Appeals for the Federal Circuit has not, however, directly addressed which statute—the civilian version or the defense version—applies when a defense agency issues, or proposes to issue, a task order under a civilian agency contract program. In the other Siemens cases, discussed below, that Siemens has filed in the United States Court of Federal Claims with facts and legal issues similar to the facts and legal issues in the above captioned and numbered case, the United States Court of Federal Claims has considered the FASA task order bar applicable to defense agencies at 10 U.S.C. § 3406(f). See, e.g., Siemens I, No. 22-1870, 177 Fed. Cl. at 172; Siemens II, No. 22-698, 176 Fed. Cl. at 456; Siemens IV, No. 26-282, 181 Fed. Cl. at 514. In other cases in which a defense agency issued, or proposed to issue, a task order under a civilian agency contract, however, the United States Court of Federal Claims has considered the case based on the FASA task order bar applicable to civilian agencies at 41 U.S.C. § 4106(f). See, e.g., Radiance Techs. Inc. v. United States, 174 Fed. Cl. 197, 202 (2024); Tolliver Grp., Inc. v. United States, 151 Fed. Cl. 70, 93 (2020), abrogated on other grounds by 22nd Century Techs., Inc. v. United States, 57 F.4th 993 (Fed. Cir. 2023); OST, Inc. v. United States, 140 Fed. Cl. 662, 666 (2018), appeal dismissed, No. 2019-1469, 2019 WL 13219446 (Fed. Cir. Apr. 3, 2019). In their submissions to the court in the above captioned and numbered case, both Siemens and defendant cite the defense statute at 10 U.S.C. § 3406(f) as the potential FASA task order bar relevant to the above captioned and numbered case. Moreover, as indicated above, the Judge previously assigned to the above captioned and numbered case analyzed the statute at 10 U.S.C. § 3406(f) as the FASA task order bar potentially relevant to the above captioned and numbered case. See Siemens III, No. 24-1313, 2025 WL 3774760, at *4. Therefore, and because the text of the statutes at 10 U.S.C. § 3406(f) and 41 U.S.C. § 4106(f) are quite similar, this court will base the discussion in this Opinion on the statute at 10 U.S.C. § 3406(f) when considering defendant's current Motion for Reconsideration.

defendant, which did not occur before the case was transferred to the undersigned. See id.

After the Judge previously assigned to the above captioned and numbered case issued his December 31, 2025 Opinion and Order, and the above captioned and numbered case was transferred to the undersigned, defendant filed a Motion for Reconsideration pursuant to Rule 54(b) (2025) of the United States Court of Federal Claims (RCFC), requesting the undersigned to "reconsider [the previous Judge's] opinion and order of December 31, 2025 denying the Government's motion to dismiss Counts II and III" of Siemens' Second Amended Complaint. (alteration added). Defendant's Motion for Reconsideration does not address Count I of Siemens' Second Amended Complaint in Siemens III, No. 24-1313. Defendant's Motion for Reconsideration has been fully briefed.[3] The facts of the December 31, 2025 Opinion and Order issued by the Judge previously assigned to the above captioned and numbered case are incorporated into this Opinion with some of the facts most relevant to defendant's current Motion for Reconsideration also described below.

## FINDINGS OF FACT

The context in which the Siemens case currently under review, Siemens III, No. 24-1313, arose is that, pursuant to the National Energy Conservation Policy Act, 42 U.S.C. § 8201 et seq. (2024), the United States Department of Energy (DOE) is responsible for administering an energy savings performance contract program. See 42 U.S.C. § 8287 (2024). Under the energy savings performance contract program, the DOE may award indefinite-delivery-indefinite-quantity (IDIQ) contracts "for the purpose of achieving energy savings and benefits ancillary to that purpose." See 42 U.S.C. § 8287(a)(1). Moreover, other Federal government agencies also may issue task or delivery orders under the IDIQ contracts that the DOE awards. See 42 U.S.C. § 8287(c). Payment under the energy savings performance contract program is performance-based, such that

> the contractor shall incur costs of implementing energy savings measures, including at least the costs (if any) incurred in making energy audits, acquiring and installing equipment, and training personnel, in exchange for

[3] As discussed more fully below, the court notes that "[r]econsideration under RCFC 54(b) is available 'as justice requires,'" which is to be determined at the court's discretion. See Loveridge v. United States, 150 Fed. Cl. 123, 126 (2020) (alteration added) (quoting L-3 Commc'ns Integrated Sys., L.P. v. United States, 98 Fed. Cl. 45, 48 (2011)). A motion for reconsideration is not intended "to give an 'unhappy litigant an additional chance to sway' the court." Stueve Bros. Farms, LLC v. United States, 107 Fed. Cl. 469, 475 (2012) (quoting Matthews v. United States, 73 Fed. Cl. 524, 525 (2006)), aff'd, 737 F.3d 750 (Fed. Cir. 2013). Defendant, as the moving party, "must support its motion for reconsideration by a showing of exceptional circumstances justifying relief, based on a manifest error of law or mistake in fact." Banks v. United States, 84 Fed. Cl. 288, 292 (2008); see also 1100 W. Ewing Assoc., LLC v. United States, 139 Fed. Cl. 24, 25 (2018).

> a share of any energy savings directly resulting from implementation of such measures during the term of the contract.

42 U.S.C. § 8287(a)(1). The statute at 42 U.S.C. § 8287 also gives ordering agencies the authority to "accept, retain, sell, or transfer, and apply the proceeds of the sale or transfer of, any energy and water incentive, rebate, grid services revenue, or credit (including a renewable energy certificate) to fund a contract under" the energy savings performance contract program. 42 U.S.C. § 8287(a)(2)(H).

Pursuant to the statute at 42 U.S.C. § 8287, the DOE awarded a multiple-award IDIQ contract, Energy Savings Performance Contract No. DE-EE0008041, to Siemens and other awardees. (the IDIQ Contract). The scope of work under the IDIQ Contract involved "providing all personnel, facilities, equipment, materials, supplies, and services to install energy and water conservation projects and renewable energy projects, and provid[ing] O&M [operations and maintenance] and measurement and verification (M&V) as specified in each TO [task order]." (alterations added). The IDIQ Contract also provided, in relevant part:

> The Contractor shall be responsible for determining the source, value, and availability of any applicable financial, tax, or other incentives for the project and shall collaborate with the ordering agency to consider all available incentive options, including but not limited to those described in this Section C.12. The Contractor shall evaluate and obtain all available incentives and shall apply such incentives to offset the project cost to the ordering agency, unless otherwise directed by the ordering agency.

With respect to the issuance of task orders under the IDIQ Contract, subsection H.3.1 of the IDIQ Contract stated:

> The Government has awarded multiple IDIQ contracts for the work specified in this contract. Therefore, in accordance with FAR 16.505(b), <u>Orders under multiple-award contracts</u>, fair opportunity must be provided to all IDIQ contract awardees. The ordering agency CO [Contracting Officer], as defined in Attachment J-2, may periodically issue TOs pursuant to the fair opportunity ordering procedures for selecting an ESCO [Energy Savings Contractor] set forth in the paragraphs below.

(alterations added; emphasis in original). Subsection H.3.2 of the IDIQ Contract listed the "typical sequence of key events" for the award of a task order under the IDIQ Contract as follows:

> **A.** <u>Notice of Opportunity (NOO) and Selection of an ESCO</u>. The ordering agency gives notice and a fair opportunity for award to all IDIQ contract holders by publishing an NOO, and ultimately selects one (1) ESCO to develop an ESPC [Energy Savings Performance Contract] TO project based on information submitted in response to the NOO. Such information

> may include Contractor qualifications, PAs [Preliminary Assessments[4]], and other specified facts or data.
>
> **B.** Preliminary Assessment (PA) Development. The ESCO submits a PA to the ordering agency, which provides the conceptual range of the expected ECMs [Energy Conservation Measures], costs and savings for the project.
>
> **C.** Intent to Award/Request for Proposal. If the ordering agency and ESCO agree to pursue the project, the ordering agency CO will issue a Notice of Intent to Award (NOITA) followed by a TO RFP [Task Order Request for Proposal], which identifies the ordering agency's specific requirements.
>
> **D.** Proposal Submission. The ESCO submits a proposal, which includes technical and price components, and a small business subcontracting plan (if the ESCO is a large business).
>
> **E.** TO Award. Based on a negotiated proposal, the ordering agency awards a TO to the selected ESCO.

(alterations and footnote added; emphasis in original). Moreover, subsection H.3.4 of the IDIQ Contract, titled "Contractor Selection Procedures," stated, in relevant part:

> The ordering agency CO must provide each Contractor a fair opportunity to be considered for any TO award. In selecting an ESCO, the ordering agency CO may exercise discretion in developing Contractor selection procedures, as long as the ordering agency CO complies with the FAR, all other applicable laws (specifically including, but not limited to 42 U.S.C. § 8287, et seq.) and regulations (specifically including, but not limited to, 10 CFR Part 436), ordering agency policies, and the framework of the selection methods established below. The ordering agency CO shall indicate, in the NOO to all IDIQ holders, the selection method and steps for selection that the ordering agency intends to use for the entire ordering process. The ordering agency CO reserves the right to adjust the selection process.

Additionally, regarding reimbursement of contractor costs, subsection H.5.1(D) of the IDIQ Contract stated: "The ordering agency will not be responsible for any costs incurred, such as proposal preparation costs or costs incurred in preparing the IGA [Investment Grade Audit], unless a TO is awarded or such costs are otherwise authorized for payment by the ordering agency CO." (alteration added).

On June 28, 2019, the Defense Logistics Agency (DLA) issued a Notice of Opportunity under the IDIQ Contract for an energy savings project at the Goodfellow Air

---

[4] According to subsection H.4.1 of the IDIQ Contract, a Preliminary Assessment "sets out the merits, technical feasibility, range of projected energy savings, economics, and conceptual price range of the project."

Force Base in San Angelo, Texas. According to Siemens' Second Amended Complaint,[5] the Notice of Opportunity, which was sent to "the 21 existing IDIQ Contract holders," stated that the "DLA intended to issue a task order to a single contractor," and also stated that "the 'selected [contractor] will be required to develop a formal Preliminary Assessment (PA) and Investment Grade Audit (IGA), as applicable, in accordance with' the IDIQ Contract." (alteration in Siemens' Second Amended Complaint). On July 31, 2019, Siemens submitted a proposal in response to the Notice of Opportunity.

On December 19, 2019, the DLA selected Siemens to prepare a Preliminary Assessment for an energy savings project at the Goodfellow Air Force Base. According to Siemens' Second Amended Complaint, "[p]erforming a preliminary assessment requires contractors to (1) undertake extensive efforts to evaluate the facilities designated by the agency using agency data, (2) propose a list of recommended and potential energy conservation measures for those facilities, and (3) determine the economic and technical feasibility of each proposed conservation measure." (alteration added). On July 24, 2020, Siemens submitted its Preliminary Assessment to the DLA.

On October 1, 2020, the DLA issued a Notice of Intent to Award a Task Order to Siemens and "directed Siemens to design a project focused on the construction of a power plant" for the Goodfellow Air Force Base and to conduct an Investment Grade Audit. According to Siemens' Second Amended Complaint, an Investment Grade Audit "is a labor-intensive review of the facilities to determine whether the proposed energy conservation measures are viable, meaning that they will pay for themselves over time in energy savings." Siemens conducted an Investment Grade Audit for the Goodfellow Air Force Base project, which Siemens submitted to the DLA on August 11, 2021. As alleged in Siemens' Second Amended Complaint, Siemens' Investment Grade Audit "was premised on three components relevant to" the above captioned and numbered case:

> 37. First, Siemens estimated the value of electricity generated by a new power station according to projections of the Texas electrical grid's locational marginal pricing index rate, which fluctuates according to the season and time of day in predictable patterns. For example, consumers consistently demand more electricity in the mornings and evenings than during normal working hours. This "index pricing" contrasted with "block" pricing, whereby the customer negotiates a fixed energy cost at variable intervals. Because pricing blocks would have to be negotiated by Goodfellow, and because the [Goodfellow Air Force] base had not blocked prices in the past, Siemens' analysis reflected a 100% index/0% block rate.

[5] The Second Amended Complaint was the subject of the December 31, 2025 Opinion and Order issued by the Judge previously assigned to the above captioned and numbered case, which denied dismissal of Counts II and III, and deferred consideration of Count I. See Siemens III, No. 24-1313, 2025 WL 3774760, at *4. The court discusses the procedural history and timing of the filings in Siemens III, No. 24-1313, further below.

> 38. Second, Siemens' audit included a $1 million grant from the Federal Energy Management Program, which offset the cost of initial construction and allowed the project to reduce the time it would take to repay the total cost of construction.
>
> 39. Third, the audit apportioned the share of operations, maintenance, repair, and replacement tasks according to the share negotiated with the Government during audit development.

(alteration added).

According to Siemens' Second Amended Complaint, on October 20, 2021, after Siemens submitted its Investment Grade Audit to the DLA, "the Government met with Siemens to discuss its concern with Siemens' pricing rate for the power plant" and "informed Siemens that it had begun to negotiate pricing blocks at set rates for 20% to 30% of electricity production." Siemens "notified the Government of the significant cost Siemens would incur to conduct another full audit pursuant to new parameters, including the revised block and index rates," but, according to Siemens, the DLA nonetheless requested Siemens to design three "Courses of Action" for a viable project at the Goodfellow Air Force Base using the new pricing block rates that the DLA had negotiated. According to Siemens, although Siemens "repeatedly explained that higher percentages of block pricing endangered the viability of the project," the DLA "refused to alter its instructions and refused to meet with Siemens to discuss the issue."

Thereafter, Siemens designed the three requested "Courses of Action," determining that only one "Course of Action" would be a viable project, and submitted its findings to the DLA. Over the next several months, the DLA continued to request additional "Courses of Action" with various new parameters. Siemens responded to each request by raising concerns regarding project viability and Siemens' increasing "development costs,"[6] but Siemens ultimately designed and submitted each requested "Course of Action" to the DLA. In all, between October 22, 2021, and February 4, 2022, Siemens submitted seven "Courses of Action" for the DLA's consideration. According to Siemens' Second Amended Complaint, on February 4, 2022, the same day that Siemens submitted the latest-requested "Courses of Action," the DLA "issued a stop-work order pursuant to FAR 52.242-15." On May 3, 2022, the DLA canceled the Goodfellow Air Force Base task order procurement. According to Siemens' Second Amended Complaint, the "DOE informed Siemens that DLA had cancelled the task order procurement at DOE's recommendation."

On May 2, 2023, Siemens submitted a certified claim to the DLA "seeking reimbursement of $2,835,412 in development costs that Siemens needlessly incurred as a result of the Government's actions." The DLA contracting officer issued a contracting

[6] The court notes that Siemens does not define its understanding of the term "development costs" in its briefings submitted to the court in the above captioned and numbered case.

officer's final decision denying Siemens' certified claim on August 25, 2023. According to Siemens, "[i]n an abundance of caution, Siemens also submitted a largely duplicative certified claim to DOE on July 12, 2024." (alteration added).[7] The DOE contracting officer also issued a contracting officer's final decision denying Siemens' certified claim on September 9, 2024.

On August 26, 2024, Siemens filed a three-count Complaint in the United States Court of Federal Claims, pursuant to the Tucker Act, 28 U.S.C. § 1491(a) (2024), the Contract Disputes Act (CDA), 41 U.S.C. § 7104(b)(1) (2024), and this court's bid protest jurisdiction under 28 U.S.C. § 1491(b)(1), seeking to recover the "development costs" Siemens allegedly incurred while working on the proposed project for the Goodfellow Air Force Base. On September 8, 2025, Siemens filed a "Notice of Amended Complaints," in which Siemens stated its "intention to serially file two Amended Complaints" in order to "add its appeal of the DOE contracting officer's final decision, dated September 9, 2024, to Count I of its Complaint." In the "Notice of Amended Complaints," Siemens explained:

> These Amended Complaints should have no effect on the Government's pending motion to dismiss or on the ultimate legal issues in this case. These amendments, moreover, apply only to Count I of the Complaint, which was brought under the CDA. Counts II and III of the Complaint were brought under 28 U.S.C. § 1491(b)(1) and are not substantively changed in these Amended Complaints.

(internal reference omitted). Accordingly, on September 8, 2025, Siemens filed both a First Amended Complaint and a Second Amended Complaint in the United States Court of Federal Claims.[8]

In its Second Amended Complaint, Siemens brings three counts seeking reimbursement of the "development costs" it allegedly incurred while trying to qualify for an award of the proposed Goodfellow Air Force Base project. In Count I of Siemens'

---

[7] In the "Notice of Amended Complaints," which, as discussed below, Siemens filed with the court on September 8, 2025, Siemens explained that it submitted the "largely duplicative certified claim" to the DOE contracting officer "to avoid any dispute in which the Government argued that this Court lacked Contract Disputes Act ('CDA') jurisdiction because Siemens should have first submitted a claim to DOE," which was the agency that issued the IDIQ Contract.

[8] Siemens' Second Amended Complaint, which was the subject of the December 31, 2025 Opinion and Order issued by the Judge previously assigned to the above captioned and numbered case, Siemens III, No. 24-1313, challenges both the DLA contracting officer's final decision, dated August 25, 2023, and the DOE contracting officer's final decision, dated September 9, 2024. The reasoning in this Opinion addressing the FASA task order bar and the jurisdiction of the United States Court of Federal Claims to hear Siemens' bid protest claims in Count II and Count III of Siemens' Second Amended Complaint applies equally to Siemens' challenges to the DLA and the DOE decisions.

Second Amended Complaint, Siemens alleges, pursuant to the Contract Disputes Act, 41 U.S.C. § 7104(b)(1), that, based on various actions taken by the DLA, the government breached the IDIQ Contract.[9] Specifically, Siemens alleges that "the Government was obligated under Section H.3.4 [of the IDIQ Contract] to 'provide each Contractor a fair opportunity to be considered' for any task order award" and "[t]his obligation was breached because the Government did not provide Siemens with a fair opportunity to compete for the [Goodfellow Air Force Base] task order." (alterations added). Siemens also alleges that defendant breached "an implied covenant of good faith and fair dealing" under the IDIQ Contract by "direct[ing] Siemens to prepare COAs [Courses of Action] under false pretenses," by "impos[ing] additional development costs in contravention of both the notice of opportunity and the Agency's own promises," and by "abus[ing] its discretion under the Contract by refusing to pay Siemens' development costs that were wasted by the Government's own actions." (alterations added). Siemens further alleges that defendant breached the IDIQ Contract by "fail[ing] to follow the selection method and steps it stated in its notice of opportunity." (alteration added). Moreover, Siemens alleges that defendant breached the IDIQ Contract by "ordering Siemens to conduct several rounds of COAs and foregoing inventive [sic] payments . . . ." (alteration and omission added). Additionally, Siemens alleges that defendant breached subsection H.5.1(D) of the IDIQ Contract, which, according to Siemens, "authorized the Government to pay development costs as a matter of agency discretion even if a task order was not awarded," by refusing to award Siemens the "development costs" it allegedly incurred while working on the proposed project for the Goodfellow Air Force Base.

In Count II of Siemens' Second Amended Complaint, Siemens alleges, pursuant to this court's bid protest jurisdiction under 28 U.S.C. § 1491(b)(1), that the government's failure to act in good faith violated the government's implied-in-fact contract duty to treat Siemens honestly and fairly. Siemens argues that "each of the Government's failures itemized above constituted independent instances of conduct that was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' that breached the Government's implied-in-fact contract to treat offerors fairly." Siemens continues, "[n]ot only did these actions cost $2,835,412, but the Government's decision not to compensate Siemens in that amount consisted of a further abuse of discretion that violated this implied-in-fact contract." (alteration added).

In Count III of Siemens' Second Amended Complaint, Siemens alleges, also pursuant to this court's bid protest jurisdiction under 28 U.S.C. § 1491(b)(1), that defendant "violated statute and regulations in conducting this procurement." Specifically, Siemens argues that defendant violated FAR 16.505 by failing to provide Siemens with a fair opportunity to compete for the proposed Goodfellow Air Force Base project. Siemens also argues that defendant violated "the procedures established for energy savings

[9] As indicated above, the Judge previously assigned to the above captioned and numbered case deferred ruling on defendant's motion to dismiss as to Count I of Siemens' Second Amended Complaint. See Siemens III, No. 24-1313, 2025 WL 3774760, at *1. Therefore, defendant's current Motion for Reconsideration does not seek a ruling by this court with respect to Count I of Siemens' Second Amended Complaint at this time.

performance contracts" under the statute at 42 U.S.C. § 8287 and the regulations at 10 C.F.R. Part 436 because "[n]one of these procedures permitted the Government to conduct a multi-step procurement that included several Courses of Action once an audit was complete, nor did it permit the Government to require the submission of non-viable plans." (alteration added). Siemens further argues that defendant violated the statute at 42 U.S.C. § 8287(a)(2)(H) by rejecting the inclusion of the incentive payments that Siemens proposed in the "Courses of Action."

In response to Siemens' original Complaint, defendant filed a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) (2024) and for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6), at which time the above captioned and numbered case was still assigned to the previously assigned Judge. In its motion to dismiss Siemens' original Complaint, defendant argued:

> Throughout the complaint Siemens characterizes this suit as a bid protest. If this suit is a bid protest, it is barred by the Federal Acquisition Streamlining Act's (FASA's) task order bar, 10 U.S.C. § 3406(f). To the extent Siemens is bringing a breach of contract suit—and Siemens does assert at least one claim under the Contract Disputes Act—Siemens' claims fail because (1) such CDA claims are time-barred under 41 U.S.C. § 7104(b)(3) because the case was filed more than a year after the contracting officer's final decision;[10] (2) there can be no implied-in-fact contract breach as set forth in count two when there is an actual contract; [and] (3) the clear and unambiguous language of the EPSC [sic] specifically states that Siemens cannot recover preparation and development costs, including for the PA and IGA, unless a task order issues.

(alterations and footnote added).

Moreover, after Siemens filed its Second Amended Complaint, defendant also filed a "Supplemental Motion to Dismiss Plaintiff's Contract Disputes Act Claim Against the Department of Energy," in which defendant "reasserted and incorporated by reference" defendant's original motion to dismiss, and in which defendant also raised new arguments

[10] As indicated above, in its motion to dismiss Siemens' original Complaint, defendant initially argued that Siemens' CDA claim in Count I of Siemens' original Complaint was time-barred because the DLA contracting officer issued a final decision denying Siemens' CDA claim on August 25, 2023, "[y]et Siemens filed the present suit on August 26, 2024," more than a year after the DLA contracting officer's final decision. (alteration added). Defendant continued, "Siemens does not get an additional day to file" because "August 25, 2024 was a Wednesday, and it was not a federal holiday." In its response to defendant's motion to dismiss, Siemens correctly pointed out that August 25, 2024, "was actually a Sunday, so Siemens timely filed its complaint on Monday, August 26, 2024." Accordingly, in its reply brief, defendant stated that it "withdraws its argument that Siemens' complaint was not timely filed."

addressing Count I of Siemens' Second Amended Complaint. In its supplemental motion to dismiss, defendant explained:

> As Siemens stated in its Notice of Amended Complaints—which was filed immediately before its First and Second Amended Complaints—its Second Amended Complaint does not obviate the need for a ruling on the Government's pending motion to dismiss the original Complaint because that latest complaint is nearly identical to the original Complaint. Given the intention and understanding that the amended complaints do not void the pending motion to dismiss, this motion is styled as a supplemental motion. Yet out of an abundance of caution, pursuant to RCFC 5.4(b)(3), the pending motion to dismiss is attached as Exhibit A to this motion. The arguments made in that motion and the associated briefing on that motion, are relevant to the Court's analysis as to whether to dismiss Siemens's claims in its Second Amended Complaint just as they were to analysis of the claims in the original Complaint.

(internal references omitted). Thus, the text of defendant's supplemental motion to dismiss addressed only Count I of Siemens' Second Amended Complaint. Defendant further explained in its supplemental motion to dismiss:

> The claims asserted in Counts II and III of Siemens's complaints are bid protest claims, which are not the subject of this supplemental motion. Those bid protest claims should be dismissed for the reasons set forth in defendant's motion to dismiss and the associated briefing, which argue inter alia that the bid protest claims are barred by the FASA task order bar because Siemens is challenging the non-issuance of a proposed task order and because Siemens cannot avoid the task order bar by claiming that it only seeks bid prep[aration] and proposal costs, which is merely one remedy for a successful bid protest.

(alteration added).

As indicated above, after defendant's original motion to dismiss was fully briefed, and after defendant filed its supplemental motion to dismiss, the Judge previously assigned to the above captioned and numbered case issued his December 31, 2025 Opinion and Order, which is now the subject of defendant's current Motion for Reconsideration. See Siemens III, No. 24-1313, 2025 WL 3774760. When addressing the unusual procedural history and timing of the filings in the above captioned and numbered case, the Judge previously assigned to the case stated in the December 31, 2025 Opinion and Order:

> The Government initially moved to dismiss all three counts under Rules 12(b)(1) and 12(b)(6). ECF 11. After briefing and argument was complete, Siemens filed the [Second] [A]mended [C]omplaint with the Government's consent. ECF Nos. 29, 31. The [Second] [A]mended [C]omplaint adds

> allegations relating to the CDA claim in Count I but does not change anything regarding the factual allegations or claims in Counts II and III. See ECF No. 29; compare ECF No. 1 with ECF No. 31. In response, the Government has filed a supplemental motion to dismiss Count I that raises new arguments. ECF Nos. 34, 37, 41. Because this briefing did not complete until earlier this month [December 2025], the court defers ruling on the motion to dismiss Count I until hearing argument on the supplemental motion to dismiss. The court therefore considers the motion to dismiss Counts II and III.

Siemens III, No. 24-1313, 2025 WL 3774760, at *4 (alterations added). In the December 31, 2025 Opinion and Order, the Judge previously assigned to the above captioned and numbered case denied defendant's motion to dismiss as to Counts II and III of Siemens' Second Amended Complaint, finding that the FASA task order bar at 10 U.S.C. § 3406(f) does not bar Counts II and III of Siemens' Second Amended Complaint. See id. The Judge previously assigned to the above captioned and numbered case explained the FASA task order bar as follows:

> The Federal Acquisition Streamlining Act ("FASA") limits the court's jurisdiction over bid protests related to task orders. 10 U.S.C. § 3406(f). FASA provides that a "protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order except for (A) a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued; or (B) a protest of an order valued in excess of $25,000,000." 10 U.S.C. § 3406(f)(1) (2024) (emphasis added).[ ] FASA thus bars protests that "challenge[] the issuance of [a] task order directly" or that challenge "government action (e.g., waiver of an organizational conflict of interest) whose wrongfulness would cause [a] task order's issuance to be improper." Percipient.ai, Inc. v. United States, 104 F.4th 839, 847 (Fed. Cir.), reh'g en banc granted, opinion vacated sub nom. Percipient.ai, Inc. v. United States, 121 F.4th 1311 (Fed. Cir. 2024), and on reh'g en banc sub nom. Percipient.AI, Inc. v. United States, 153 F.4th 1226 (Fed. Cir. 2025), cert. filed, ___ U.S. ___ (U.S. Oct. 08, 2025) (No. 25-428).[11] The phrase "in connection with the issuance of a

[11] As discussed more fully below, the Percipient.ai case originated as a bid protest in the United States Court of Federal Claims. See Percipient.ai, Inc. v. United States, 165 Fed. Cl. 331, 336 (2023). In Percipient.ai, although the United States Court of Federal Claims Judge initially held that the court had subject matter jurisdiction over the bid protest, see id. at 337, on reconsideration, the United States Court of Federal Claims Judge determined that the court lacked subject matter jurisdiction over the bid protest pursuant to the FASA task order bar at 10 U.S.C. § 3406(f)(1). See Percipient.ai, Inc. v. United States, No. 23-28, 2023 WL 3563093, at *1 (Fed. Cl. May 17, 2023). On appeal, the United States Court of Appeals for the Federal Circuit panel opinion initially reversed the United States Court of Federal Claims reconsideration opinion's dismissal of the bid protest, holding that the FASA task order bar did not apply to the bid protest and also

task order" can be understood by looking to the remedy sought. See SRA Int'l, Inc. v. United States, 766 F.3d 1409, 1414 (Fed. Cir. 2014) (looking to the relief sought to determine FASA's applicability). Though not dispositive, the remedy informs whether the FASA bar applies. See id.

Siemens III, No. 24-1313, 2025 WL 3774760, at *4 (alterations and emphasis in the December 31, 2025 Opinion and Order; first footnote omitted; second footnote added). In the omitted footnote in the December 31, 2025 Opinion and Order, the Judge previously assigned to the above captioned and numbered case noted that "Congress has since amended FASA to increase the dollar threshold, but that change has no impact on this case." Id. at *4 n.2.

In his December 31, 2025 Opinion and Order, the Judge previously assigned to the above captioned and numbered case, Siemens III, No. 24-1313, also indicated that this case is one of multiple cases that Siemens has brought in the United States Court of Federal Claims related to procurements under the energy savings performance contract program. See id. at *5 (citing Siemens I, No. 22-1870, 177 Fed. Cl. 165; and Siemens II, No. 22-698, 176 Fed. Cl. 450).[12] When discussing the other cases, Siemens I, No. 22-

holding that the protestor had interested-party standing under the Tucker Act, 28 U.S.C. § 1491(b)(1). See Percipient.ai, Inc. v. United States, 104 F.4th at 847. The United States Court of Appeals for the Federal Circuit subsequently granted a rehearing en banc, "limited to standing under 28 U.S.C. § 1491(b)(1)," and vacated the earlier Federal Circuit panel opinion. See Percipient.ai, Inc. v. United States, 121 F.4th at 1312. In the rehearing en banc opinion, the United States Court of Appeals for the Federal Circuit affirmed the United States Court of Federal Claims reconsideration opinion's dismissal of the bid protest for lack of standing, without revisiting the Federal Circuit panel opinion's position on jurisdiction under the FASA task order bar. See Percipient.AI, Inc. v. United States, 153 F.4th at 1243. Thereafter, the United States Supreme Court denied certiorari in the Percipient.ai case. See Percipient.ai, Inc. v. United States, 146 S. Ct. 1517, 223 L. Ed. 2d 509 (2026).

[12] Siemens I, No. 22-1870, was assigned to Judge Bruggink and, as of the date of issuance of this Opinion, the parties in that case are currently engaged in discovery. See Discovery Scheduling Order at 1, Siemens I, No. 22-1870 (Fed. Cl. May 4, 2026), Dkt. No. 41. Siemens II, No. 22-698, was assigned to Judge Smith and, as of the date of issuance of this Opinion, the parties in that case also are currently engaged in discovery. See Order at 1, Siemens II, No. 22-698 (Fed. Cl. Apr. 10, 2026), Dkt. No. 42. On February 19, 2026, after the December 31, 2025 Opinion and Order was issued by the previously assigned Judge in the case currently before this court, Siemens III, No. 24-1313, Siemens filed a fourth case in the United States Court of Federal Claims related to the energy savings performance contract program, which was assigned to Judge Hertling. See Complaint, Siemens IV, No. 26-282 (Fed. Cl. Feb. 19, 2026), Dkt. No. 1. As discussed more fully below, in Siemens IV, No. 26-282, Judge Hertling recently issued an Opinion, which denied the United States' RCFC 12(b)(1) motion to dismiss based on the FASA task order bar, but granted the United States' RCFC 12(b)(6) motion to dismiss Siemens'

1870, and Siemens II, No. 22-698, that Siemens had brought in the United States Court of Federal Claims with facts and legal issues similar to the facts and legal issues in the case currently under review, Siemens III, No. 24-1313, the Judge previously assigned to the above captioned and numbered case stated:

> In Siemens I, [No. 22-1870,] this court found that the FASA bar did not bar Siemens's claims that are materially similar to those in this case. Siemens I, 177 Fed. Cl. at 172. In Siemens I, [No. 22-1870,] this court explained that
>
>> Mere connection to a task order, however, is not enough for FASA to apply. Rather, the protest must relate to the "issuance or proposed issuance of a task order" before FASA will bar the suit. Therefore, while FASA bars challenges to "government action[s] in the direct causal chain sustaining the issuance of a task order," not "all actions taken under or after issuance of a proper task order" are "directly and casually connected" to a task order's issuance.
>
> Id. at 172 (quoting Percipient.ai, Inc. [v. United States], 104 F.4th at 849). To decipher whether the alleged actions were "'directly and casually connected' to a task order's issuance," the court looked to the requested remedy. See [Siemens I, No. 22-1870, 177 Fed. Cl.] at 172-73. In Siemens I, [No. 22-1870,] like here, the plaintiff sought reimbursement for preparation and audit costs—not the setting aside of a task order. Id. at 172. To grant this "purely monetary" remedy would thereby leave any task order unaffected. Id. at 172-73; see also SRA Int'l, Inc. [v. United States], 766 F.3d at 1414 (evaluating the relief sought to determine FASA's applicability). The court then found that where the requested relief does not "alter" or "displace" the issuance of a task order, the protest is not considered "in connection with the issuance or proposed issuance of a task or delivery order." See Siemens I, [No. 22-1870,] 177 Fed. Cl. at 172-73; see also Percipient.ai, Inc. [v. United States], 104 F.4th at 851 (finding FASA inapplicable where the "requested relief would not alter" the underlying task order). Therefore, the FASA bar did not apply. The result today is the same.
>
> Another recent Siemens case involved similar legal claims. Siemens Gov't Techs., Inc. v. United States, [No. 22-698,] 176 Fed. Cl. 450 (2025) (Siemens II). There, the court again held that the FASA bar did not apply to Siemens's claims. Id. at 453. In coming to this conclusion, the court applied a two-part test: "[f]irst, a proposed or issued task order must exist to be protested"; and, "[s]econd, the protest must be predicated upon the proposed or issued task order." Id. at 457. In Siemens II, [No. 22-698,] the Government's arguments failed under both prongs.

---

Complaint in that case, Siemens IV, No. 26-282, for failure to state a claim upon which relief can be granted. See Siemens IV, No. 26-282, 181 Fed. Cl. at 509.

> The court explained that "[a]n agency must have 'issued or proposed [the] issuance of a task . . . order' for the jurisdictional bar to apply." Id. at 457. Consequently, "if no task order has either been awarded or proffered by an agency, then the FASA bar is inapplicable." Id. at 457. In Siemens II, [No. 22-698,] the Government allegedly sought proposals under a solicitation "that it had previously awarded . . . to another corporation for the same services." Id. The court concluded that "no agency need equals no offer that can be accepted; or put differently, no proposed task order existed." Id. at 459; see id. at 457 ("Without a 'realistic' need, the Agency's solicitation was illegitimate—meaning it cannot propose . . . a need that is already fulfilled—and, thus, the U.S. Navy could neither have awarded a contract to Siemens nor could Siemens have accepted that award.") (citations omitted). Without any viable task order, this court found that "[i]n this unique context, FASA's bar is inapplicable because the task order was void from the start." Id. Given the factual distinctions between Siemens II[, No. 22-698,] and this case, it is meaningfully distinguishable.
>
> But the legal analysis is informative. In Siemens II, [No. 22-698,] the court also considered the remedy sought to determine FASA's applicability. Id. at 457, 459 (citing Percipient.ai, Inc. [v. United States], 104 F.4th at 849-51). In Siemens II, [No. 22-698,] like here, Siemens sought reimbursement for bid preparation costs following the Government's alleged conduct during the procurement process. [Siemens II, No. 22-698, 176 Fed. Cl.] at 455. Relying on Percipient.ai, Inc. [v. United States], 104 F.4th at 849-51, the court explained that though not dispositive, the "'in connection with' element [is linked] to the form of relief requested by a plaintiff." Siemens II, [No. 22-698,] 176 Fed. Cl. at 459 (citing SRA Int'l, Inc. [v. United States], 766 F.3d at 1414). The FASA bar was inapplicable where the claim and relief sought did "not assert the wrongfulness of, or seek to set aside, any task order." [Siemens II, No. 22-698, 176 Fed. Cl.] at 457 (quoting Percipient.ai, Inc. [v. United States], 104 F.4th at 847). The court then concluded that "Siemens has never sought to set aside or generally interfere with any pending or issued task order; it only wishes to be made whole after being led astray by the U.S. Navy's false procurement needs—a claim FASA does not bar." [Siemens II, No. 22-698, 176 Fed. Cl.] at 457.

Siemens III, No. 24-1313, 2025 WL 3774760, at *5-6 (third, eleventh, twelfth, fourteenth, fifteenth, seventeenth, and twenty-fourth alterations in original; omissions in original; other alterations added). Accordingly, in the December 31, 2025 Opinion and Order, the Judge previously assigned to the above captioned and numbered case, Siemens III, No. 24-1313, which is now before this court for reconsideration, held that the FASA task order bar did not apply to Count II or Count III of Siemens' Second Amended Complaint. See id. at *6. The Judge previously assigned to the above captioned and numbered case explained:

> Here, Siemens does not seek a task order or to set aside a task order. Siemens seeks only the repayment of the allegedly unnecessary expenses that it incurred solely due to the Government's arbitrary conduct during the procurement process. The Government argues that under the IDIQ contract, any challenge to the "subject conduct" is barred under FASA. Not so. Though the procedures outlined in the IDIQ contract "'will be used' in deciding whether to issue a task order," the court need not look to actual issuance to find a claim sufficiently stated for unfair process. More pointedly, the court could grant Siemens's claims for reimbursement without "affecting" or "altering" the decision to not issue a task order. See[,] e.g., Siemens II, [No. 22-698,] 177 Fed. Cl. at 172-73; see also Percipient.ai, Inc. [v. United States], 104 F.4th at 851. Because Siemens's claims are not "directly and casually [sic] connected" to the issuance of a task order and the requested relief would leave the task order unaffected, the FASA bar does not apply.
>
> Consequently, the Government's motion [to dismiss] for lack of subject matter jurisdiction for Counts II and III is denied.

Siemens III, No. 24-1313, 2025 WL 3774760, at *6 (alterations added; internal references omitted).

The Judge previously assigned to the above captioned and numbered case, Siemens III, No. 24-1313, also held, in the December 31, 2025 Opinion and Order, that Siemens had plausibly stated a claim, in Count II of Siemens' Second Amended Complaint, for breach of an implied-in-fact contract because defendant "cannot assert that the IDIQ Contract does not apply to DLA's conduct but bars the implied-in-fact contract that attaches to procurements to treat offerors fairly." See id. Moreover, as indicated above, the Judge previously assigned to the above captioned and numbered case deferred ruling on defendant's motion to dismiss as to Count I of Siemens' Second Amended Complaint "until hearing argument on the supplemental motion to dismiss" filed by defendant. See id. at *4.

After the reassignment and transfer of the above captioned and numbered case to the undersigned from the previously assigned Judge, defendant filed its Motion for Reconsideration in Siemens III, No. 24-1313, pursuant to RCFC 54(b). In its Motion for Reconsideration, defendant requests this court to "reconsider [the previous Judge's] opinion and order of December 31, 2025 denying the Government's motion to dismiss Counts II and III" of Siemens' Second Amended Complaint in Siemens III. (alteration added). As discussed more fully below, defendant argues that "justice requires" reconsideration of the previous Judge's December 31, 2025 Opinion and Order because "[t]he order contradicts itself and adopts the wrong test in holding that Siemens's bid protest claims are not within the scope of the task order bar set forth in the Federal

Acquisition Steamlining [sic] Act (FASA)." (alterations added).[13] Thereafter, Siemens filed a response to defendant's Motion for Reconsideration arguing that the court "should deny the Government's motion for reconsideration, which offers no reason to revisit the Court's prior decision holding that the Federal Acquisition Streamlining Act ('FASA') task order protest bar does not apply here." Defendant then filed a reply in support of its Motion for Reconsideration. Defendant's current Motion for Reconsideration has been fully briefed.

**DISCUSSION**

As indicated above, defendant's current Motion for Reconsideration, filed pursuant to RCFC 54(b), requests this court to "reconsider [the prior Judge's] opinion and order of December 31, 2025 denying the Government's motion to dismiss Counts II and III" of Siemens' Second Amended Complaint. (alteration added). The United States Court of Appeals for the Federal Circuit has stated that "[t]he decision whether to grant reconsideration lies largely within the discretion of the [trial] court." See Yuba Nat. Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir.) (alterations added), reh'g denied (Fed. Cir. 1990); see also Sikorsky Aircraft Corp. v. United States, 171 Fed. Cl. 327, 329-30 (2024). "A motion for reconsideration is not intended . . . to give an unhappy litigant an additional chance to sway the court." Stueve Bros. Farms, LLC v. United States, 107 Fed. Cl. at 475 (internal quotations omitted; omission in original); see also Haggart v. United States, 133 Fed. Cl. 568, 573 (2017), aff'd, 943 F.3d 943 (Fed. Cir. 2019); L-3 Commc'ns Integrated Sys., L.P. v. United States, 98 Fed. Cl. at 49 (quoting Alpha I, L.P. ex rel. Sands v. United States, 86 Fed. Cl. 568, 572 (2009) (quoting Matthews v. United States, 73 Fed. Cl. at 525)). "It is not sufficient for [defendant] to reassert the same arguments they made in earlier proceedings, nor can [defendant] raise new arguments that could have been made earlier." Lee v. United States, 130 Fed. Cl. 243, 252 (2017) (alterations added), aff'd, 895 F.3d 1363 (Fed. Cir. 2018); see also Sikorsky Aircraft Corp. v. United States, 171 Fed. Cl. at 332-33 ("The government may not now invoke RCFC 54(b) to revisit arguments that have been previously raised and, in due course, rejected." (citing Haggart v. United States, 133 Fed. Cl. at 573; and Haddad v. United States, 152 Fed. Cl. 1, 18 n.12 (2021))). Therefore, "a motion for reconsideration 'should not be based on evidence that was readily available at the time the motion was heard.'" Johnson v. United States, 127 Fed. Cl. 661, 664 (2016) (quoting Seldovia Native Ass'n Inc. v. United States, 36 Fed. Cl. 593, 594 (1996), aff'd, 144 F.3d 769 (Fed. Cir. 1998)). "'Post-opinion motions to reconsider are not favored . . . especially where a party has had a fair opportunity to

[13] As noted above, given that the Judge previously assigned to the above captioned and numbered case, Siemens III, No. 24-1313, deferred ruling on defendant's motion to dismiss as to Count I of Siemens' Second Amended Complaint, defendant's current Motion for Reconsideration does not seek a reconsideration ruling with respect to Count I of Siemens' Second Amended Complaint. Moreover, in its Motion for Reconsideration, defendant also notes that in its initial motion to dismiss, it "asserted that Count II of Siemens's complaint should be dismissed because it impermissibly asserts breach of implied contract terms that are addressed by the express IDIQ agreement," but, "[w]hile we reserve the right to reassert this argument if warranted, we do not seek reconsideration of the Court's holding on that issue." (alteration added).

litigate the point in issue.'" Wagstaff v. United States, 118 Fed. Cl. 172, 175 (omission in original) (quoting Aerolease Long Beach v. United States, 31 Fed. Cl. 342, 376, aff'd, 39 F.3d 1198 (Fed. Cir. 1994)), aff'd, 595 F. App'x 975 (Fed. Cir. 2014); see also Cully Corp. v. United States, 163 Fed. Cl. 676, 687 (2022), appeal dismissed, No. 2023-2006, 2023 WL 5038823 (Fed. Cir. Aug. 8, 2023). "The moving party must support its motion for reconsideration by a showing of exceptional circumstances justifying relief, based on a manifest error of law or mistake in fact." Banks v. United States, 84 Fed. Cl. at 292 (discussing RCFC 54(b) and 59(a)); see also 1100 W. Ewing Assoc., LLC v. United States, 139 Fed. Cl. at 25 (stating that a motion for reconsideration under either RCFC 54(b) or RCFC 59(a) "should only be granted upon the showing of 'exceptional circumstances justifying relief, based on manifest error of law or mistake in fact'" (quoting Webster v. United States, 93 Fed. Cl. 676, 679 (2010) (citing Henderson Cnty. Drainage Dist. No. 3 v. United States, 55 Fed. Cl. 334, 337 (2003)))); Alpha I, L.P. ex rel. Sands v. United States, 86 Fed. Cl. 126, 129 (2009) (discussing RCFC 54(b) and 59(a)).

RCFC 54(b) provides:

> **(b) Judgment on Multiple Claims or Involving Multiple Parties.** When an action presents more than one claim for relief—whether as a claim, counterclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

RCFC 54(b) (emphasis in original). As explained by a Judge of the United States Court of Federal Claims:

> Reconsideration under RCFC 54(b) is available "as justice requires." L-3 Commc'ns Integrated Sys., L.P. v. United States, 98 Fed. Cl. 45, 48 (2011). "While the threshold for reconsideration under RCFC 54(b) is imprecise, it certainly 'leaves within [its] ambit . . . a good deal of space for the [c]ourt's discretion.'" Martin [v. United States], 101 Fed. Cl. [664,] 671 [(2011)] (quoting Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004)). Asking "what justice requires amounts to determining, within the [c]ourt's discretion, whether reconsideration is necessary under the relevant circumstances." Farmers Coop. Co. v. United States, 100 Fed. Cl. 579, 581 (2011) (internal quotation omitted).

Loveridge v. United States, 150 Fed. Cl. at 126 (third, fourth, and fifth alteration added; other alterations and omissions in original); see also Mynette Techs., Inc. v. United States, 170 Fed. Cl. 201, 223 (2024); Cully Corp. v. United States, 163 Fed. Cl. at 687 ("'While the threshold for reconsideration under RCFC 54(b) is imprecise, it certainly

"leaves within [its] ambit . . . a good deal of space for the [c]ourt's discretion."'" (alterations and omission in original) (quoting Martin v. United States, 101 Fed. Cl. at 671 (quoting Cobell v. Norton, 224 F.R.D. at 272))). "The 'as justice requires' standard affords the Court significant discretion in determining whether reconsideration is appropriate." Navajo Nation v. United States, 175 Fed. Cl. 114, 121 (2025) (citing Loveridge v. United States, 150 Fed. Cl. at 126). "[R]econsideration is available 'as justice requires,' which typically means that the court 'patently misunderstood a party;' 'made a decision outside the adversarial issues' that the parties presented to the court; 'made an error not of reasoning, but of apprehension;' or that 'controlling or significant' changes in the law or facts have occurred since the issue was submitted to the Court." CAN Softtech, Inc. v. United States, 174 Fed. Cl. 412, 416 (2024) (alteration added) (quoting Sacramento Grazing Ass'n v. United States, 154 Fed. Cl. 769, 778-79 (2021); and L-3 Commc'ns Integrated Sys., L.P. v. United States, 98 Fed. Cl. at 49). Another Judge of this court has indicated:

> Under Rule 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims . . . does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." RCFC 54(b); see Marconi Wireless Tele. Co. v. United States, 320 U.S. 1, 47-48, 63 S. Ct. 1393, 87 L. Ed. 1731, (1943) (A court has power "at any time prior to entry of its final judgment . . . to reconsider any portion of its decision and reopen any part of the case."); John Simmons Co. v. Grier Bros. Co., 258 U.S. 82, 88, 42 S. Ct. 196, 66 L. Ed. 475 (1922) ("If [an order is] interlocutory, the court at any time before final decree may modify or rescind it."). The rule reflects the precept that "[a]t an interlocutory stage, the common law provides that the court has power to reconsider its prior decision on any ground consonant with application of the law of the case doctrine." Wolfchild v. United States, 68 Fed. Cl. 779, 785 (2005).

Bos. Edison Co. v. United States, 156 Fed. Cl. 632, 636-37 (2021) (alterations and omissions in original).

In its Motion for Reconsideration in the above captioned and numbered case, Siemens III, No. 24-1313, defendant argues that "justice requires" reconsideration of the December 31, 2025 Opinion and Order issued by the Judge previously assigned to the above captioned and numbered case. Defendant asserts that "it is undisputed that the claims brought in Counts II and III in Siemens's Second Amended Complaint are bid protests [sic] claims" and argues that "FASA's task order bar divests this Court of jurisdiction over Siemens's bid protest claims." (alteration added). Defendant asserts that all the actions challenged by Siemens were "directly and causally" connected to the DLA's proposed issuance of a task order. According to defendant, the Judge previously assigned to the above captioned and numbered case erred in his December 31, 2025 Opinion and Order by, in defendant's view, (1) holding that the remedy sought is dispositive of whether the FASA task order bar applies, (2) relying on the vacated Percipient.ai, Inc. v. United States, 104 F.4th 839, case, as well on two allegedly "mistaken rulings" by other Judges of the United States Court of Federal Claims in

Siemens I, No. 22-1870, and Siemens II, No. 22-698, respectively, in lieu of binding United States Court of Appeals for the Federal Circuit precedent in SRA International, Inc. v. United States, 766 F.3d 1409, and (3) interpreting the "in connection with" language used in FASA narrowly and "inconsistent with other authorities."[14]

Siemens responds that the court "should deny the Government's motion for reconsideration, which offers no reason to revisit the Court's prior decision holding that the Federal Acquisition Streamlining Act ('FASA') task order protest bar does not apply here." Siemens asserts that defendant's Motion for Reconsideration "does not identify any intervening change in controlling law or new evidence, and its assertion of clear error amounts to nothing more than disagreement with the Court's prior decision, decisions in the other Siemens cases, and the Federal Circuit's recent (but vacated) holding on this

[14] In a footnote in its Motion for Reconsideration, defendant also states:

> Aside from the task order bar, it does not appear Siemens has pleaded an actionable claim in Count III, i.e., the regulations it claims were violated do not provide it with an actionable claim. For example, FAR 16.505 merely imposes a rule about allowing the IDIQ holders to compete for a task order, and it plainly applies to all IDIQ contract holders during the task order procurement process. It does not provide Siemens with an actionable claim after the down selection that left it as the last offeror standing. Similarly, Siemens does not actually plead a violation of 10 C.F.R § 436.33(a) despite citing it. Regardless, that regulation merely provides internal governmental direction, not an actionable claim. See Am. Tel. & Tel. Co. v. United States, 307 F.3d 1374, 1380 (Fed. Cir. 2002) ("cautionary and informative regulations and directives provide only internal governmental direction. . . . [such] provisions supply no remedy for private parties in a judicial forum.").

(alterations, emphasis, and omissions in defendant's brief). Siemens responds, "[t]his is a new argument that was not raised in the Government's multiple previous motions to dismiss, nor in any of the subsequent briefing." (alteration added). A review of defendant's initial motion to dismiss, supplemental motion to dismiss, and associated briefing demonstrates that defendant did not previously raise this argument regarding whether FAR 16.505 or 10 C.F.R. § 436.33(a) provide Siemens with "an actionable claim." The court does not address defendant's newly raised argument in this Opinion on defendant's Motion for Reconsideration, which could have been raised in earlier proceedings in the above captioned and numbered case. See Stueve Bros. Farms, LLC v. United States, 107 Fed. Cl. at 475 ("A motion for reconsideration is not an opportunity to make new arguments that could have been made earlier; 'an argument made for the first time in a motion for reconsideration comes too late, and is ordinarily deemed waived.'" (quoting Bluebonnet Sav. Bank, F.S.B. v. United States, 466 F.3d 1349, 1361 (Fed. Cir. 2021); and citing Gen. Elec. Co. v. United States, 189 Ct. Cl. 116, 118, 416 F.2d 1320, 1369 (1969))); see also Lee v. United States, 130 Fed. Cl. at 252.

issue."[15] Siemens argues that Judges of the United States Court of Federal Claims, and the United States Court of Appeals for the Federal Circuit, have repeatedly rejected the government's very broad interpretation of the FASA task order bar. (citing Percipient.ai, Inc. v. United States, 104 F.4th 839; Siemens I, No. 22-1870, 177 Fed. Cl. 165; Siemens II, No. 22-698, 176 Fed. Cl. 450; and Siemens III, No. 24-1313, 2025 WL 3774760). Siemens asserts that in the case currently before the court, Siemens III, No. 24-1313, it "does not seek to have a task order rescinded, nor does it seek to have the Government reassess its non-issuance of a task order." Siemens, therefore, argues that the Judge previously assigned to the above captioned and numbered case, in which defendant has filed the current Motion for Reconsideration, Siemens III, No. 24-1313, "correctly determined that Siemens' claims do not challenge the issuance or non-issuance of a task order and therefore fall outside the FASA task order protest bar . . . ." (omission added).

As indicated above, in defendant's current Motion for Reconsideration, defendant asserts that "it is undisputed that the claims brought in Counts II and III in Siemens's Second Amended Complaint are bid protests [sic] claims" and argues that "FASA's task order bar divests this Court of jurisdiction over Siemens's bid protest claims." (alteration added). The United States Court of Federal Claims has general jurisdiction to hear bid protests pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1), which provides that this court has

> jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

Id.; see also Life Sci. Logistics, LLC v. United States, 172 F.4th 1357, 1365 (Fed. Cir. 2026); Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1359 (Fed. Cir. 2009). Moreover, the Administrative Dispute Resolution Act of 1996 (ADRA), Pub. L. No. 104-320, §§ 12(a), 12(b), 110 Stat. 3870, 3874 (1996) (codified at 28 U.S.C. § 1491(b)(1)-(4)), amended the Tucker Act to establish a statutory basis for post-award bid protests in the United States Court of Federal Claims. See Impresa Construzioni Geom. Domenico

---

[15] In a footnote in its response to defendant's Motion for Reconsideration, Siemens states that it "recognizes that the Federal Circuit vacated Percipient.ai[, Inc. v. United States, 104 F.4th 839,] on different grounds, so it is no longer precedential authority for this Court" but notes that, "as multiple judges on this Court have recognized, it [the Percipient.ai case] remains persuasive authority for its holding on the FASA task order protest bar, which the en banc panel decided not to revisit." (alterations added) (citing Radiance Techs. Inc. v. United States, 174 Fed. Cl. at 202 n.3; and Siemens I, No. 22-1870, Fed. Cl. at 172). This court notes that, in the Order granting a rehearing en banc in the Percipient.ai case, the United States Court of Appeals for the Federal Circuit specifically stated that it "will not revisit and does not require additional briefing on the issues of task bar under the Federal Acquisition Streamlining Act of 1994 (FASA), 10 U.S.C. § 3406(f)[.]" Percipient.ai, Inc. v. United States, 121 F.4th at 1312 (alteration added).

Garufi v. United States, 238 F.3d 1324, 1330 (Fed. Cir. 2001); see also Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1380 (Fed. Cir. 2012) (explaining that the Tucker Act expressly waives sovereign immunity for claims against the United States in bid protests).

The Federal Acquisition Streamlining Act of 1994, 10 U.S.C. § 3406(f),[16] however, limits jurisdiction in the United States Court of Federal Claims over certain bid protests that arise in the context of a task or delivery order. The statute at 10 U.S.C. § 3406(f) provides:

> **(f) Protests.**--(1) A protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order except for--
>
> > (A) a protest on the ground that the order increases the scope, period, or maximum value of the contract under which the order is issued; or
> >
> > (B) a protest of an order valued in excess of $35,000,000.
>
> (2) Notwithstanding section 3556 of title 31,[17] the Comptroller General of the United States shall have exclusive jurisdiction of a protest authorized under paragraph (1)(B).

Id. (footnote added; emphasis in original); see also Unison Software, Inc. v. United States, 168 Fed. Cl. 160, 166 (2023) ("While this court has jurisdiction over bid protests in general (28 U.S.C. § 1491(b)), Congress has, through FASA, expressly limited the court's bid-protest jurisdiction by prohibiting protests 'in connection with the issuance or proposed issuance of a task or delivery order.'" (quoting 10 U.S.C. § 3406(f); and citing 22nd Century Techs., Inc. v. United States, 57 F.4th at 998)). Based on the statutory language at 10 U.S.C. § 3406(f)(1)(A) & (B), the United States Court of Appeals for the Federal Circuit has recognized that the statute specifically provides "two narrow exceptions" to the application of the FASA task order bar, "namely, [1] when the order 'increases the

[16] As indicated above, there is a parallel FASA task order bar in Title 41 of the United States Code, which applies to civilian agencies. See 41 U.S.C. § 4106(f). Given that "[t]he text of the two provisions [10 U.S.C. § 3406(f) and 41 U.S.C. § 4106(f)] is similar, except for the different monetary thresholds over which task order protests may be heard by the Comptroller General," Percipient.ai, Inc. v. United States, 104 F.4th at 846 n.2 (alterations added), the court considers the case law interpreting both the statute at 10 U.S.C. § 3406(f) and the statute at 41 U.S.C. § 4106(f).

[17] The statute at 31 U.S.C. § 3556 (2024) provides that "[t]his subchapter does not give the Comptroller General exclusive jurisdiction over protests, and nothing contained in this subchapter shall affect the right of any interested party to file a protest with the contracting agency or to file an action in the United States Court of Federal Claims." Id. (alteration added).

scope, period, or maximum value of the contract under which the order is issued' or [2] the order is 'valued in excess of $25,000,000.'" 22nd Century Techs., Inc. v. United States, 57 F.4th at 998 (alterations added) (quoting 10 U.S.C. § 3406(f)).[18] The United States Government Accountability Office (GAO) is tasked by statute to hear bid protests "in connection with the issuance or proposed issuance" of task orders that satisfy the dollar threshold at 10 U.S.C. § 3406(f)(1)(B). See 10 U.S.C. § 3406(f)(2); see also SRA Int'l, Inc. v. United States, 766 F.3d at 1413; Nextgen Networks, Inc. v. United States, 124 Fed. Cl. 645, 654 (2015).

Outside of the exceptions outlined above, which are not applicable to the case currently before the court, the United States Court of Appeals for the Federal Circuit has generally construed the FASA task order bar broadly. See SRA Int'l, Inc. v. United States, 766 F.3d at 1413; see also 22nd Century Techs., Inc. v. United States, 57 F.4th at 998. In SRA International, Inc. v. United States, the United States Court of Appeals for the Federal Circuit held that an offeror's protest of an agency's issuance of an Organizational Conflict of Interest (OCI) waiver fell under the FASA task order bar. See SRA Int'l, Inc. v. United States, 766 F.3d at 1414. The protestor, SRA International, Inc. (SRA), had been providing network infrastructure support services to the Federal Deposit Insurance Corporation (FDIC) since 2009 under a task order colloquially known as "ISC [Infrastructure Support Contract]-2," which was issued under the General Services Administration's (GSA) "Millennia" Government-Wide Acquisition Contract (GWAC). See id. at 1410 (alteration added). While SRA provided the network infrastructure support services under the ISC-2 task order, another contractor, Blue Canopy Group, LLC (Blue Canopy), "conducted security audits for the FDIC of SRA's network security." See id. In June 2012, the GSA solicited a new task order for follow-on network infrastructure support services under the "Alliant" GWAC, "which superseded the Millennia GWAC." See id. The GSA initially awarded the task order to Computer Sciences Corporation (CSC), but after SRA protested the award to the GAO, the GSA terminated the task order for convenience and reissued the solicitation with corrective amendments. See id. On August 14, 2013, "the GSA again awarded a task order to CSC—referred to as ISC-3—for more than $365 million." Id.

SRA again protested to the GAO, "alleging that there were two OCIs based on CSC's intended use of Blue Canopy as a subcontractor: 'impaired objectivity'; and 'unequal access to information.'" SRA Int'l, Inc. v. United States, 766 F.3d at 1410-11. Specifically, in its second GAO protest, SRA "alleged that Blue Canopy's work with the FDIC gave Blue Canopy 'access to SRA's proprietary information' and knowledge of 'how the FDIC evaluated SRA's work,' which SRA argued led to the alleged OCIs." Id. at 1411. In response to SRA's second GAO protest, CSC attempted to cure the alleged OCIs by agreeing to remove Blue Canopy as a subcontractor under the ISC-3 task order. See id. Although SRA conceded that the removal of Blue Canopy as a subcontractor under the

[18] Since the United States Court of Appeals for the Federal Circuit's decision in 22nd Century Technologies, Inc. v. United States, 57 F.4th 993, Congress amended the defense FASA statute to increase the dollar threshold under 10 U.S.C. § 3406(f)(1)(B) to $35,000,000.00. See 10 U.S.C. § 3406(f)(1)(B).

ISC-3 task order cured the alleged "impaired objectivity" OCI, SRA maintained that an "unequal access to information" OCI continued to exist. See id. SRA also argued that "CSC and Blue Canopy violated FDIC regulations . . . by submitting false certifications, prior to being awarded ISC-3, that no OCIs existed." Id. (omission added). On November 25, 2013, although "[t]he GSA found the possibility of an OCI to be 'exceedingly remote and unsubstantiated,'" the GSA issued a waiver, pursuant to FAR 9.503, of the alleged "unequal access to information" OCI. See SRA Int'l, Inc. v. United States, 766 F.3d at 1411 (alteration added; internal reference omitted).

Thereafter, SRA filed suit in the United States Court of Federal Claims "seeking declarations that the OCI waiver is void for failing to satisfy FDIC law and regulations and for failure to set forth the extent of the OCI." Id. SRA "also sought a permanent injunction preventing award of ISC-3 to CSC due to the alleged false certifications" and "sought a declaration that, because the GSA could have awarded SRA the task order, it was 'arbitrary, capricious and unreasonable to make an illegal award to an invalid offeror.'" Id. (internal references omitted). The United States moved to dismiss for lack of subject matter jurisdiction based on the FASA task order bar. See id. According to the United States Court of Appeals for the Federal Circuit in SRA International:

> Although dismissing the case on other grounds, the United States Court of Federal Claims held that it had jurisdiction over the challenge to the validity of the OCI waiver under the Tucker Act, despite the Federal Acquisition Streamlining Act of 1994 ("FASA") bar on jurisdiction over protests "in connection with the issuance or proposed issuance of a task or delivery order," 41 U.S.C. § 4106(f)(1) (2012).

SRA Int'l, Inc. v. United States, 766 F.3d at 1410 (citing SRA Int'l, Inc. v. United States, 114 Fed. Cl. 247 (2014)). Also according to the United States Court of Appeals for the Federal Circuit in SRA International:

> The Court of Federal Claims denied the Government's motion, holding it had jurisdiction to decide SRA's claims concerning the validity of the waiver. Important to its decision was the "fact that the Waiver was issued well after the award"—here, 102 days later. Also important was the notion that waiver under FAR 9.503 "is a matter left to agency discretion." Thus, according to the court, "not only [was] the Waiver in this case discretionary, it [was] also distinct—in both a temporal and causal sense—from the ISC-3 Task Order."

SRA Int'l, Inc. v. United States, 766 F.3d at 1412 (alterations in original; internal references and footnote omitted) (citing SRA Int'l, Inc. v. United States, 114 Fed. Cl. at 255-56).

On appeal, however, the United States Court of Appeals for the Federal Circuit held that the United States Court of Federal Claims "erred in exercising jurisdiction over SRA's claims because SRA's protest of the OCI waiver is 'in connection with the issuance' of ISC-3." SRA Int'l, Inc. v. United States, 766 F.3d at 1413. When explaining the contours

of the FASA task order bar, the United States Court of Appeals for the Federal Circuit stated:

> The statutory language of FASA is clear and gives the court no room to exercise jurisdiction over claims made "in connection with the issuance or proposed issuance of a task or delivery order." Even if the protestor points to an alleged violation of statute or regulation, as SRA does here, the court still has no jurisdiction to hear the case if the protest is in connection with the issuance of a task order. We acknowledge that this statute is somewhat unusual in that it effectively eliminates all judicial review for protests made in connection with a procurement designated as a task order—perhaps even in the event of an agency's egregious, or even criminal, conduct. Yet Congress's intent to ban protests on the issuance of task orders is clear from FASA's unambiguous language.

Id. The United States Court of Appeals for the Federal Circuit also stated that "neither the discretionary nature of the OCI waiver nor the temporal disconnect between it [the OCI waiver] and the issuance of ISC-3 removes it from FASA's purview" because "nothing in FASA's plain language carves out an exception for discretionary agency actions" and "nothing in FASA's language automatically exempts actions that are temporally disconnected from the issuance of a task order." Id. (alteration added). The United States Court of Appeals for the Federal Circuit recognized, however, that "a temporal disconnect may, in some circumstances, help to support the non-application of the FASA [task order] bar . . . ." Id. at 1413-14 (alteration and omission added) (citing Global Computer Enters., Inc. v. United States, 88 Fed. Cl. 350, 410, 412 (2009)).[19] The United States Court of Appeals for the Federal Circuit also stated that, "though not necessarily dispositive," the relief sought by SRA—recission of the ISC-3 task order at issue—"[f]urther demonstrat[ed] the connection between" SRA's protest and the issuance of the ISC-3 task order, so as to warrant application of the FASA task order bar. SRA Int'l, Inc. v. United States, 766 F.3d at 1414 (alterations added). Ultimately, the United States Court of Appeals for the Federal Circuit held that, because "[e]ach of SRA's allegations attacks the waiver or some consequential effect of the waiver," and because "the OCI waiver was directly and causally connected to issuance of ISC-3," the United States Court of Federal Claims did not have subject matter jurisdiction over SRA's protest. Id. at 1413-14 (alteration added).

---

[19] In Global Computers Enterprises, Inc. v. United States, a Judge of the United States Court of Federal Claims found that FASA does not operate to bar challenges to the modification of a task order, in part because of the temporal disconnect between the issuance of a task order and the subsequent modification of the task order. See Glob. Computers Enters., Inc. v. United States, 88 Fed. Cl. at 410. The Judge in Global Computers stated that she could not "conclude that a task order modification, which, by definition, must occur subsequent to the circulation, publication, or distribution—i.e., issuance—of the task order itself, bears any connection with the original issuance that brought the task order into existence." Id. at 412.

Thus, according to the United States Court of Appeals for the Federal Circuit in SRA International, a protest is "in connection with the issuance or proposed issuance" of a task order, so as to warrant application of the FASA task order bar, if the challenged agency decision is "directly and causally connected" to "the issuance or proposed issuance" of a task order. See SRA Int'l, Inc. v. United States, 766 F.3d at 1413; see also FYI - For Your Information, Inc. v. United States, 170 Fed. Cl. 601, 614 (2024) ("[I]n applying SRA International, the salient question is whether the challenged agency decision 'is directly and causally connected to [the] issuance of [a task order],' while recognizing that 'a temporal disconnect may, in some circumstances, help to support the non-application of the FASA bar[.]'" (first alteration added; other alterations in original) (quoting SRA Int'l, Inc. v. United States, 766 F.3d at 1413)); Radiance Techs. Inc. v. United States, 174 Fed. Cl. at 204 ("FASA's language refers to an agency action that is 'directly and causally connected to' the issuance or proposed issuance of a task order." (quoting SRA Int'l, Inc. v. United States, 766 F.3d at 1413)); Unison Software, Inc. v. United States, 168 Fed. Cl. at 166-67 ("The Federal Circuit has determined that a government action is 'in connection with' a task order if that action is 'directly and causally connected' to the task order." (quoting SRA Int'l, Inc. v. United States, 766 F.3d at 1413)).

The United States Court of Appeals for the Federal Circuit addressed the FASA task order bar again in 22nd Century Technologies, Inc. v. United States, 57 F.4th 993, in which the United States Department of the Army (Army) issued a solicitation for a multiple-award, "Responsive Strategic Sourcing for Services" (RS3) IDIQ contract seeking "knowledge-based support services." See id. at 996. Although the solicitation for the RS3 IDIQ contract was not set aside for small business concerns, the solicitation "allowed the Army to restrict subsequent task order competitions under the contract" to small business concerns. Id. at 996-97. On May 6, 2015, 22nd Century Technologies, Inc. (22nd Century) submitted a proposal in response to the solicitation for the RS3 IDIQ contract and, on March 1, 2019, 22nd Century was awarded the RS3 IDIQ Contract. See id. at 997. Notably, 22nd Century was a small business concern at the time it submitted its proposal in response to the solicitation for the RS3 IDIQ contract on May 6, 2015. See id. The Army subsequently issued a task order solicitation under the RS3 IDIQ Contract, which the Army set aside for small business concerns. See id. Although 22nd Century "was no longer a small business at the time of the task order solicitation," 22nd Century submitted a proposal in response to the task order solicitation and "represented that it had been 'a small business for this [RS3] IDIQ,' i.e., at the time of its original RS3 IDIQ proposal." Id. (alteration in original). The Army issued the task order to 22nd Century. See id. Thereafter, two disappointed bidders filed size protests with the Small Business Administration (SBA), "alleging that 22nd Century was ineligible for the award because it was not a small business at the time it submitted" its proposal in response to the task order solicitation. Id. After the SBA Area Office found that 22nd Century was "other-than-small" at the time it submitted its proposal in response to the task order solicitation, and after the SBA Office of Hearings and Appeals (OHA) affirmed the SBA Area Office's size determination, the Army terminated the task order awarded to 22nd Century. See id.

22nd Century subsequently filed suit in the United States Court of Federal Claims seeking the court to "set aside OHA's size determination and enjoin the Army from

terminating the task order based on OHA's size determination." Id. The United States moved to dismiss 22nd Century's suit for lack of subject matter jurisdiction based on the FASA task order bar. See id. at 997-98. The United States Court of Federal Claims held that FASA barred jurisdiction over 22nd Century's claims and granted the United States' motion to dismiss. See id. at 998.

On appeal, the United States Court of Appeals for the Federal Circuit in 22nd Century affirmed the United States Court of Federal Claims' dismissal for lack of subject matter jurisdiction. See id. at 1000. The United States Court of Appeals for the Federal Circuit stated that the United States Court of Federal Claims "has jurisdiction to consider the propriety of an SBA size determination in a bid protest case or other contract action over which it has jurisdiction" but that "bid protest jurisdiction here is barred by FASA." Id. at 999. The United States Court of Appeals for the Federal Circuit reiterated its holding from SRA International, Inc. v. United States, stating:

> FASA's unambiguous language categorically bars jurisdiction over bid protests, even those involving a challenge to an SBA size determination where the size determination is challenged "in connection with the issuance of a task or delivery order." 10 U.S.C. § 3406(f)(1). FASA "effectively eliminates all judicial review for protests made in connection with a procurement designated as a task order—perhaps even in the event of an agency's egregious, or even criminal, conduct." SRA Int'l[, Inc. v. United States], 766 F.3d at 1413. The Claims Court correctly held that 22nd Century's challenge here "is clearly made in connection with the issuance of a task order and is therefore barred by FASA. That is so because 22nd Century's challenge is to the alleged failure of the task order to require bidders to recertify as small businesses, and 22nd Century's claim is that the only relevant size requirement for purposes of its task order proposal was in the original RS3 IDIQ Contract.

22nd Century Techs., Inc. v. United States, 57 F.4th at 999-1000 (alteration added; footnote and internal reference omitted).

More recently, in the vacated panel opinion in Percipient.ai, Inc. v. United States, 104 F.4th 839, the United States Court of Appeals for the Federal Circuit, before granting a rehearing en banc, as discussed below, recognized a limited circumstance in which a case, despite having been initiated in the overall context of a task order procurement, was not barred from consideration in the United States Court of Federal Claims by the FASA task order bar. See id. at 849-50. As background, Percipient.ai, Inc. (Percipient), "a technology company that developed a computer vision software called 'Mirage,'" brought suit in the United States Court of Federal Claims alleging that the National Geospatial-Intelligence Agency (NGA) "violated its statutory and regulatory obligations by wastefully pursuing a development solution when a possible commercial solution existed." Percipient.ai, Inc. v. United States, 165 Fed. Cl. at 336. Percipient's suit arose from a

solicitation for the “SAFFIRE” contract,[20] “which was an indefinite delivery, indefinite quantity contract” that involved “a data repository that would store and disseminate geospatial intelligence ‘across various large organizations’” and also involved the integration of “a computer vision system to enhance the agency’s ability to produce, review, and classify intelligence from ‘millions’ of images.” Id. at 334 (internal references omitted). “Percipient did not bid on the SAFFIRE contract because its [Mirage] software could only fulfill SAFFIRE’s computer vision requirements, not the entire contract.” Id. at 335 (alteration added). The NGA awarded the SAFFIRE contract and Task Order 1 to CACI, Inc. – Federal (CACI). See id.; see also Percipient.ai, Inc. v. United States, 2023 WL 3563093, at *1. Relying “on what it viewed as the agency’s statutory obligation to consider incorporating commercial products,” Percipient “hoped to be part of NGA’s SAFFIRE efforts” by performing as a subcontractor to CACI. Percipient.ai, Inc. v. United States, 165 Fed. Cl. at 335. After learning “that CACI would be developing a computer vision system for SAFFIRE” and “[a]fter Percipient’s efforts to be incorporated into SAFFIRE proved unfruitful,” Percipient filed a bid protest in the United States Court of Federal Claims alleging that the NGA violated its statutory obligation, under 10 U.S.C. § 3453, to procure commercial or non-developmental products “to the maximum extent practicable.” Percipient.ai, Inc. v. United States, 165 Fed. Cl. at 335-36 (alteration added). The United States and CACI “moved to dismiss for lack of subject matter jurisdiction” on various grounds, including, as relevant to the dispute currently before the court in the above captioned and numbered case, Siemens III, No. 24-1313, that Percipient lacked standing to bring its bid protest claim and that Percipient’s bid protest claim was barred by FASA. See Percipient.ai, Inc. v. United States, 165 Fed. Cl. at 336-37.

The United States Court of Federal Claims initially held that the court had “subject matter jurisdiction over Percipient’s protest” because “FASA’s task order bar will not apply when, as here, a task order exceeds $25,000,000.” Id. at 337. Moreover, the United States Court of Federal Claims held that Percipient had standing, finding that Percipient had a direct economic interest in the NGA’s award of the SAFFIRE contract, and stating that “offerors of commercial products need not bid on the prime contract to have [10 U.S.C.] § 3453 standing.” See Percipient.ai, Inc. v. United States, 165 Fed. Cl. at 337-40 (alteration added). On reconsideration, however, the United States Court of Federal Claims determined that the court lacked subject matter jurisdiction over Percipient’s bid protest because “Percipient’s protest is directly and causally related to the agency’s issuance” of a task order. See Percipient.ai, Inc. v. United States, 2023 WL 3563093, at *3. Thereafter, Percipient appealed to the United States Court of Appeals for the Federal Circuit.

On appeal, a panel of the United States Court of Appeals for the Federal Circuit initially held that the FASA task order bar did not apply to Percipient’s bid protest, that Percipient’s bid protest fell within the jurisdiction of the United States Court of Federal

[20] On reconsideration, the United States Court of Federal Claims clarified that the NGA simultaneously solicited the SAFFIRE contract and a “Task Order 1” under the SAFFIRE Contract for the development and delivery of computer vision software. See Percipient.ai, Inc. v. United States, 2023 WL 3563093, at *1.

Claims under the Tucker Act, 28 U.S.C. § 1491(b)(1), and that Percipient had standing to challenge the NGA's alleged violation of 10 U.S.C. § 3453, which establishes a preference for commercial products and commercial services. See Percipient.ai, Inc. v. United States, 104 F.4th at 851-52, 858. With respect to the FASA task order bar, the panel of the United States Court of Appeals for the Federal Circuit stated:

> FASA provides that a "protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order." 10 U.S.C. § 3406(f)(1). Consistent with the statutory focus on "issuance" and this court's decision in SRA International, Inc. v. United States, 766 F.3d 1409, 1413 (Fed. Cir. 2014), we interpret this language to mean that a protest is barred if it challenges the issuance of the task order directly or by challenging a government action (e.g., waiver of an organizational conflict of interest) whose wrongfulness would cause the task order's issuance to be improper. To determine whether the Court of Federal Claims erred in dismissing Percipient's complaint, we analyze each of the claims in the complaint. In doing so it becomes clear that the FASA task order bar does not preclude the Court of Federal Claims from exercising jurisdiction over Percipient's protest, which does not assert the wrongfulness of, or seek to set aside, any task order.

Percipient.ai, Inc. v. United States, 104 F.4th at 847. The panel of the United States Court of Appeals for the Federal Circuit explained that it "underst[ood] SRA [International]'s reference to 'directly and causally connected to issuance of [a task order]' to refer to government action in the direct causal chain sustaining the issuance of a task order, not to all actions taken under or after issuance of a proper task order." Percipient.ai, Inc. v. United States, 104 F.4th at 850 (first and second alteration added; third alteration in original). Moreover, the panel of the United States Court of Appeals for the Federal Circuit found that "Percipient does not challenge the issuance or proposed issuance of a task order" because "Percipient's requested relief would not alter NGA's issuance of Task Order 1 to CACI." Id. at 851. Additionally, regarding standing, the panel of the United States Court of Appeals for the Federal Circuit held, "in the context of this case involving alleged violations of 10 U.S.C. § 3453 without challenging the contract, an interested party includes an offeror of commercial or nondevelopmental services or items whose direct economic interest would be affected by the alleged violation of the statute." Percipient.ai, Inc. v. United States, 104 F.4th at 858.

Subsequently, however, the United States Court of Appeals for the Federal Circuit granted a rehearing en banc and vacated the earlier panel opinion. See Percipient.ai, Inc. v. United States, 121 F.4th at 1312. In the Order granting a rehearing en banc, the United States Court of Appeals for the Federal Circuit stated:

> The parties are requested to file new briefs, which shall be limited to standing under 28 U.S.C. § 1491(b)(1) and address the following question: Who can be "an interested party objecting to . . . any alleged violation of

> statute or regulation in connection with a procurement or a proposed procurement" under 28 U.S.C. § 1491(b)(1)?

Percipient.ai, Inc. v. United States, 121 F.4th at 1312 (omission in original). Notably, also in the Order granting a rehearing en banc, the United States Court of Appeals for the Federal Circuit stated:

> The court will not revisit and does not require additional briefing on the issues of task bar under the Federal Acquisition Streamlining Act of 1994 (FASA), 10 U.S.C. § 3406(f); subject matter jurisdiction under 28 U.S.C. § 1491(b)(1); and timeliness of claims under Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308 (Fed. Cir. 2007).

Percipient.ai, Inc. v. United States, 121 F.4th at 1312. Therefore, the immediately above-quoted language suggests that, in granting a rehearing en banc limited to the issue of interested-party standing under 28 U.S.C. § 1491(b)(1), the United States Court of Appeals for the Federal Circuit did not upend its initial position regarding jurisdiction under the FASA task order bar that was expressed in the vacated panel opinion. See Percipient.ai, Inc. v. United States, 121 F.4th at 1312. On rehearing en banc, the United States Court of Appeals for the Federal Circuit "affirm[ed] the Court of Federal Claims' dismissal of Percipient.ai's protest for lack of standing," without revisiting the FASA task order bar issue, and without remanding the case to the United States Court of Federal Claims for further adjudication. See Percipient.AI, Inc. v. United States, 153 F.4th at 1243 (alteration added).

As indicated above, a Judge of the United States Court of Federal Claims has stated that the "[m]ere connection to a task order . . . is not enough for FASA to apply." Siemens I, No. 22-1870, 177 Fed. Cl. at 172 (alteration and omission added) (citing Percipient.ai, Inc. v. United States, 104 F.4th at 849); see also Percipient.ai, Inc. v. United States, 104 F.4th at 850 (stating that the "in connection with" language used in FASA refers "to government action in the direct causal chain sustaining the issuance of a task order, not to all actions taken under or after issuance of a proper task order"). In Count II of Siemens' Second Amended Complaint in Siemens III, No. 24-1313, Siemens alleges that defendant's failure to act in good faith violated defendant's implied-in-fact contract duty to treat Siemens honestly and fairly. Specifically, Siemens argues in Count II of its Second Amended Complaint that "the Government's decision not to compensate" Siemens for the "development costs" it allegedly incurred while working on the proposed Goodfellow Air Force Base project constituted an "abuse of discretion that violated this implied-in-fact contract." That DLA decision, which is challenged in Count II of Siemens' Second Amended Complaint in Siemens III, No. 24-1313, not to compensate Siemens for the "development costs" it allegedly incurred, was not "directly or causally connected" to the "issuance or proposed issuance" of the Goodfellow Air Force Base task order. Pursuant to subsection H.5.1(D) of the IDIQ Contract, the DLA retained discretion to reimburse Siemens for its alleged "development costs," even when no task order was issued to Siemens, provided that "such costs are otherwise authorized for payment by the ordering agency CO."

In Count III of Siemens' Second Amended Complaint in Siemens III, No. 24-1313, Siemens alleges that defendant "violated statute and regulations in conducting this procurement," which allegedly caused Siemens "to needlessly incur $2,835,412 in development costs" while working on the proposed Goodfellow Air Force Base project. Siemens argues that defendant failed to follow the "procedures established for energy savings performance contracts" in the statute at 42 U.S.C. § 8287 and the regulations at 10 C.F.R. Part 436. Siemens also argues that defendant violated its duty to provide Siemens with a fair opportunity to compete for the proposed Goodfellow Air Force Base project. Unlike in the 22nd Century case, in which the protestor's claim was barred by FASA because it challenged the terms of a task order solicitation, see 22nd Century Techs., Inc. v. United States, 57 F.4th at 1000 ("22nd Century's challenge is to the alleged failure of the task order to require bidders to recertify as small businesses"), in Count III of Siemens' Second Amended Complaint filed in the case currently before the court, Siemens III, Siemens challenges the DLA's compliance with the statute and regulations governing the energy savings performance contract program rather than the terms of the Goodfellow Air Force Base procurement.

This court also considers the nature of the relief sought by Siemens to help inform whether the FASA task order bar applies to Counts II and III of Siemens' Second Amended Complaint in Siemens III, No. 24-1313. See SRA Int'l, Inc. v. United States, 766 F.3d at 1414; see also Percipient.ai, Inc. v. United States, 104 F.4th at 851. In its Second Amended Complaint in Siemens III, No. 24-1313, Siemens seeks an award of $2,835,412.00 in damages for the "development costs" it allegedly incurred while working on the proposed Goodfellow Air Force Base project. Therefore, unlike in the SRA International case, in which the protestor sought recission of the task order at issue, see SRA Int'l, Inc. v. United States, 766 F.3d at 1414, and unlike in the 22nd Century case, in which the protestor requested the court to enjoin the agency from terminating the task order at issue, see 22nd Century Techs., Inc. v. United States, 57 F.4th at 997, in the above captioned and numbered case, Siemens III, No. 24-1313, Siemens does not seek the award of a task order or seek to set aside a task order. Therefore, Siemens' claims in Count II and Count III of its Second Amended Complaint in Siemens III, No. 24-1313, can be considered not "in connection with" the "proposed issuance" of the Goodfellow Air Force Base task order, in part because the requested relief would not "alter" the DLA's cancellation of the Goodfellow Air Force Base project and non-issuance of the Goodfellow Air Force Base task order. See Percipient.ai v. United States, 104 F.4th at 851 (finding that the FASA task order bar did not apply to a protestor's claims, in part because the "requested relief would not alter" the agency's issuance of a task order). In other words, Siemens' request for reimbursement of "development costs" does not challenge the issuance, or, in this case, the non-issuance, of the Goodfellow Air Force Base task order directly, and does not challenge the possible wrongfulness of the Goodfellow Air Force Base task order's non-issuance as improper. See id. at 847 (interpreting FASA "to mean that a protest is barred if it challenges the issuance of the task order directly or by challenging a government action (e.g., waiver of an organizational conflict of interest) whose wrongfulness would cause the task order's issuance to be improper"). Rather, Siemens challenges certain DLA actions, the possible wrongfulness of which allegedly

caused Siemens "to needlessly incur" increased "development costs" while working on the proposed Goodfellow Air Force Base project.

Moreover, in defendant's current Motion for Reconsideration requesting this court to reconsider the previous Judge's December 31, 2025 Opinion and Order in Siemens III, No. 24-1313, which denied defendant's motion to dismiss Counts II and III of Siemens' Second Amended Complaint, defendant merely reasserts the same arguments that defendant raised in earlier proceedings before the Judge previously assigned to the above captioned and numbered case. In the December 31, 2025 Opinion and Order in Siemens III, No. 24-1313, which denied defendant's motion to dismiss Counts II and III of Siemens' Second Amended Complaint, the Judge previously assigned to the above captioned and numbered case already carefully reviewed and rejected the FASA task order bar argument presented by defendant in its current Motion for Reconsideration. Defendant fails to present any new, persuasive arguments that Count II or Count III of Siemens' Second Amended Complaint challenge agency action "in connection with" the "issuance or proposed issuance" of the Goodfellow Air Force Base task order, which is insufficient for the purposes of a motion seeking reconsideration pursuant to RCFC 54(b). See Lee v. United States, 130 Fed. Cl. at 252; see also Sikorsky Aircraft Corp. v. United States, 171 Fed. Cl. at 332-33. Based on the foregoing, including the allegations in Counts II and III of Siemens' Second Amended Complaint in Siemens III, No. 24-1313, as well as based on the relief sought by Siemens, FASA should not bar the United States Court of Federal Claims from considering Counts II or III of Siemens' Second Amended Complaint, whether those counts appear to have a probability of success or not at this time.

Relatedly, and contrary to defendant's assertion in its Motion for Reconsideration that the Judge previously assigned to the above captioned and numbered case "held that the relief sought is dispositive of whether or not the task order bar applies," the Judge previously assigned to the above captioned and numbered case did not hold, in the December 31, 2025 Opinion and Order in Siemens III, No. 24-1313, that the remedy sought by Siemens is dispositive of whether the FASA task order bar applies. Rather, the Judge previously assigned to the above captioned and numbered case stated that "[t]he phrase 'in connection with the issuance of a task order' can be understood by looking to the remedy sought" and, therefore, "[t]hough not dispositive, the remedy informs whether the FASA bar applies." Siemens III, No. 24-1313, 2025 WL 3774760, at *4 (citing SRA Int'l, Inc. v. United States, 766 F.3d at 1414). When considering the remedy sought by Siemens, the Judge previously assigned to the above captioned and numbered case indicated that Siemens "does not seek a task order or to set aside a task order" and that "the court could grant Siemens's claims for reimbursement without 'affecting' or 'altering' the decision to not issue a task order.'" Siemens III, No. 24-1313, 2025 WL 3774760, at *6. The Judge previously assigned to the above captioned and numbered case held that "[b]ecause Siemens's claims are not 'directly and casually [sic] connected' to the issuance of a task order and the requested relief would leave the task order unaffected, the FASA bar does not apply." Id. (alterations and emphasis added).

As mentioned in the December 31, 2025 Opinion and Order, issued by the Judge previously assigned to the above captioned and numbered case, Siemens III, No. 24-

1313, defendant's FASA task order bar argument has been considered, and rejected, in multiple other cases also brought by Siemens in the United States Court of Federal Claims, challenging agency action involving various task order procurements under the same energy savings performance contract program. See, e.g., Siemens I, No. 22-1870, 177 Fed. Cl. at 172; Siemens II, No. 22-698, 176 Fed. Cl. at 457; Siemens IV, No. 26-282, 181 Fed. Cl. at 514. Although not binding, the other cases brought by Siemens in the United States Court of Federal Claims, No. 22-1870, No. 22-698, and No. 26-282, respectively, can be informative and suggest that defendant's FASA task order bar argument should not be successful in the above captioned and numbered case, Siemens III, No. 24-1313, especially because this court is currently considering the FASA task order bar issue on a motion for reconsideration. See W. Coast Gen. Corp. v. Dalton, 39 F.3d 312, 315 (Fed. Cir. 1994) ("Court of Federal Claims decisions, while persuasive, do not set binding precedent for separate and distinct cases in that court."). As discussed above, in Siemens I, No. 22-1870, Siemens challenged government action arising from a United States Army Corps of Engineers (the Army Corps) task order procurement for an energy savings project at Spangdahlem Air Force Base in Germany. See Siemens I, No. 22-1870, 177 Fed. Cl. at 168. In Siemens I, No. 22-1870, Siemens was selected under an IDIQ contract to conduct a Preliminary Assessment for an energy savings project at Spangdahlem Air Force Base and, after reviewing Siemens' Preliminary Assessment, the Army Corps sent Siemens a Notice of Intent to Award a task order and instructed Siemens to complete an Investment Grade Audit. See id. at 169. Thereafter, the Army Corps "gave Siemens conflicting instructions on how to prepare the audit" and several other issues "plagued its [Siemens'] efforts." Id. at 170 (alteration added). The Army Corps eventually cancelled the Spangdahlem Air Force Base project and Siemens filed suit in the United States Court of Federal Claims to recover its bid preparation costs. See id. at 171. The United States moved to dismiss Siemens' claims in Siemens I, No. 22-1870, for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), arguing, among other assertions, that Siemens' claims were barred by FASA. See id. at 172.

In Siemens I, No. 22-1870, the court denied the United States' motion to dismiss. See id. at 168. With respect to the FASA task order bar, the court held:

> FASA does not bar Siemens's suit. Like the plaintiff in Percipient[.ai], Siemens does not "assert the wrongfulness of, or seek to set aside, any task order." Percipient[.ai, Inc. v. United States], 104 F.4th at 846-47. Instead, Siemens pursues a purely monetary remedy: reimbursement of the money it spent preparing the assessment and audits. see also Percipient[.ai, Inc. v. United States], 104 F.4th at 851 (finding that FASA did not apply to Percipient's suit because its "requested relief would not alter" the task order's issuance); SRA Int'l, Inc. v. United States, 766 F.3d 1409, 1414 (Fed. Cir. 2014) (noting that the relief sought, although not dispositive, informs whether FASA applies). Because Siemens does not challenge either "the issuance of the task order" or "a government action . . . whose wrongfulness would cause the task order's issuance to be improper," Percipient[.ai, Inc. v. United States], 104 F.4th at 847, the bar is not

> applicable.

Siemens I, No. 22-1870, 177 Fed. Cl. at 172-73 (alterations added; internal references omitted; omissions in original).

Moreover, in Siemens II, No. 22-698, Siemens challenged government action arising from a United States Department of the Navy (Navy) task order procurement for energy savings projects at six overseas bases in Europe, Africa, and Southwest Asia. See Siemens II, No. 22-698, 176 Fed. Cl. at 453. In Siemens II, No. 22-698, Siemens was selected under an IDIQ contract to conduct Preliminary Assessments and energy conservation audits for projects at various overseas bases, including, Souda Bay and Camp Lemonnier, but later learned that the Navy had conducted parallel procurements for those same projects at Souda Bay and Camp Lemonnier that were duplicative of Siemens' work. See id. at 454-55. The Navy eventually canceled the Souda Bay and Camp Lemonnier projects and Siemens filed suit in the United States Court of Federal Claims seeking to recover its bid preparation costs. See id. at 455. The United States moved to dismiss Siemens' claims in Siemens II, No. 22-698, for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), arguing, among other assertions, that Siemens' claims were barred by FASA. See id. at 456.

In Siemens II, No. 22-698, the court denied the United States' motion to dismiss. See id. With respect to the FASA task order bar, the court held:

> FASA's bar is inapplicable because FASA's two requirements are not satisfied. First, the U.S. Navy did not (nor could it) issue or propose to issue the Solicitation. Second, this protest is not connected to the Solicitation because Siemens neither seeks to set aside nor generally interfere with the Solicitation. With neither FASA element satisfied, Siemens' lawsuit is therefore jurisdictionally proper under this case's rare facts and must be allowed to proceed.

Siemens II, No. 22-698, 176 Fed. Cl. at 453 (emphasis in original). As an initial matter, the court found that FASA did not apply because the task order at issue in Siemens II, No. 22-698, was "void from the start," given that the Navy "had previously awarded a contract to another corporation for the same services" sought from Siemens. Id. at 457. Nevertheless, when expanding on the conclusion that the FASA task order bar did not apply to Siemens' claims in Siemens II, No. 22-698, the court stated:

> The protest must be "in connection with" the proposed or issued task order for the jurisdictional bar to apply. 10 U.S.C. § 3406(f). While, usually, "any claim . . . made 'in connection with the issuance or proposed issuance of a task or delivery order' is beyond our subject-matter jurisdiction," Computer World Servs. Corp. [v. United States], 173 Fed. Cl. [582,] 585 [(2024)] (emphasis in original) (relying, in part, upon SRA Int'l, Inc. [v. United States], 766 F.3d at 1413), the Federal Circuit recently recognized an exception in Percipient.ai, Inc. that applies here.

> Percipient.ai, Inc.—like its sister Federal Circuit cases, SRA Int'l, Inc. and 22nd Century Techs.—links the 'in connection with' element to the form of relief requested by a plaintiff. See SRA Int'l, Inc. [v. United States], 766 F.3d at 1414 (reasoning that, while not "dispositive," relief sought can inform the purpose of a plaintiff's claims); cf., e.g., Computer World Servs. Corp. [v. United States], 173 Fed. Cl. at 586. For instance, Percipient.ai, Inc. did "not challenge the issuance of" any task order specifically. Percipient.ai, Inc. [v. United States], 104 F.4th at 849-51. Rather, it sought a revaluation of the statutory language used by the agency to issue task orders generally. Id.

Siemens II, No. 22-698, 176 Fed. Cl. at 459 (alterations added; emphasis and omissions in original). Accordingly, the court stated that "Siemens only seeks to be reimbursed after the U.S. Navy, in violation of its statutory obligations, allegedly mislead [sic] Siemens about its needs, making this case like Percipient.ai. Siemens' lawsuit is therefore not in connection with a task order, making FASA's jurisdictional bar inapplicable." Siemens II, No. 22-698, 176 Fed. Cl. at 459 (alteration added; internal references omitted).

More recently, in Siemens IV, 26-282, Siemens challenged government action arising from an Army Corps task order procurement for an energy savings project at Army bases in Wiesbaden, Germany. See Siemens IV, No. 26-282, 181 Fed. Cl. at 509. In Siemens IV, No. 26-282, Siemens was selected under an IDIQ contract to conduct a Preliminary Assessment "for energy-savings initiatives at the Army Garrison in Wiesbaden, Germany." Id. at 511. After Siemens "submitted a 174-page PA [Preliminary Assessment] outlining proposed energy-conservation measures and offering calculations of potential energy savings," the Army Corps issued Siemens a notice to proceed to prepare a Detailed Feasibility Study. Id. (alteration added). The Detailed Feasibility Study required Siemens to evaluate 21 proposed energy conservation measures (ECMs), including "ECM 9.01," which "constituted 25 percent of the estimated savings on the cost of energy to the Army under the" energy savings performance contract. See id. Subsequently, "a month before the DFS [Detailed Feasibility Study] was due, the [Army] Corps provided Siemens with an updated notice to proceed," which removed ECM 9.01. Id. at 511-12 (alterations added). According to Siemens, the Army Corps "removed ECM 9.01 from the notice to proceed because the [Army] Corps failed to coordinate properly with two Army organizations affected by the" energy savings performance contract. Id. at 512 (alteration added). "As a result of the conflicting interests of the two Army organizations and the [Army] Corps' failure to resolve the dispute between them over the desirability of ECM 9.01 until late in the DFS process, Siemens expended significant resources to develop a proposal that would become unviable once ECM 9.01 was removed." Id. (alteration added). The Army Corps eventually "decided not to move forward with the project and cancelled the task order RFP." Id.

In Siemens IV, No. 26-282, Siemens filed suit in the United States Court of Federal Claims alleging that the Army Corps "violated its obligations under an implied-in-fact contract to consider bids 'fairly and honestly'" and that the Army Corps violated various FAR provisions "requiring agencies to conduct business with integrity, fairness, and

openness, and to provide offerors a fair opportunity to compete." See Siemens IV, No. 26-282, 181 Fed. Cl. at 509. The United States moved to dismiss Siemens' claims in Siemens IV, No. 26-282, for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6). See id. The United States argued that the United States Court of Federal Claims lacked subject matter jurisdiction based on the FASA task order bar. See id. Although, as discussed more fully below, the court ultimately dismissed Siemens' Complaint in Siemens IV, No. 26-282, for failure to state a claim pursuant to RCFC 12(b)(6), the court found that "FASA does not bar Siemens's claims for bid-preparation costs" for the purpose of subject matter jurisdiction in the United States Court of Federal Claims. See id. at 514. Specifically, the court stated:

> The issue presented by the defendant here in its motion to dismiss for lack of jurisdiction is the same one addressed in Siemens's three previous cases seeking ESPC bid-preparation costs, and the result is the same. FASA does not bar Siemens's claims for bid-preparation costs, and the motion to dismiss under RCFC 12(b)(1) is denied.
>
> * * *
>
> As in its three other cases, Siemens is neither challenging the [Army] Corps' decision not to award the task order nor seeking an order reinstating the procurement, reopening the evaluation of its proposal, or awarding it the task order. Any decision in connection with Siemens's claims will have no effect on the issuance or proposed issuance of a task order because Siemens is not challenging either "the issuance of the task order" or "a government action . . . whose wrongfulness would cause the task order's issuance to be improper." Percipient.ai[, Inc. v. United States], 104 F.4th at 847.
>
> Instead, Siemens seeks only to recover the costs it spent on the procurement attributable to the alleged violation by the [Army] Corps of an implied-in-fact contract and provisions of the FAR. Any award of compensation for these costs does not require review of the decision not to award Siemens the task order. The relief requested in the complaint would leave the decision not to award the task order unaffected. Under Percipient.ai and SRA, the nature of the relief sought by Siemens is sufficient to sidestep the FASA bar.

Siemens IV, No. 26-282, 181 Fed. Cl. at 514-15 (alterations added; omission in original; footnote omitted). Thus, in each of the four cases in which Siemens has challenged agency action arising out of various task order procurements under the energy savings performance contract program, and in which the United States has moved to dismiss for lack of subject matter jurisdiction based on the FASA task order bar, four Judges of this court have concluded that FASA does not bar Siemens' claims. See, e.g., Siemens I, No.

22-1870, 177 Fed. Cl. at 172; Siemens II, No. 22-698, 176 Fed. Cl. at 457; Siemens III, No. 24-1313, 2025 WL 3774760, at *6; and Siemens IV, No. 26-282, 181 Fed. Cl. at 514.

As noted above, the court in Siemens IV, No. 26-282, also found that Siemens' Complaint in that case "fail[ed] to allege facts plausibly suggesting that the [Army] Corps breached an implied-in-fact contract or violated its obligations under the FAR," in part because "[t]he complaint does not allege any conduct by the [Army] Corps that plausibly suggests that the [Army] Corps did not treat Siemens fairly and honestly or took any arbitrary or capricious action against Siemens." Siemens IV, No. 26-282, 181 Fed. Cl. at 516-17 (alterations added). When distinguishing Siemens IV, No. 26-282, from the other cases that Siemens had brought in the United States Court of Federal Claims with similar facts and legal issues, including the above captioned and numbered case, Siemens III, No. 24-1313, the Judge in Siemens IV, No. 26-282, stated:

> Here, the allegations do not approach in severity the threshold that has enabled Siemens to avoid dismissal of its prior ESPC cases. Siemens makes no allegation that the [Army] Corps intentionally misled it, like the "sham" in Heyer [Prods. Co. v. United States, 135 Ct. Cl. 63, 70, 140 F. Supp. 409, 413 (Ct. Cl. 1956)]. Siemens does not allege that it incurred costs because the [Army] Corps had awarded the contract to another provider or concocted "false procurement needs." See Siemens I[I], [No. 22-698,] 176 Fed. Cl. at 457. Siemens also does not allege that the [Army] Corps gave conflicting instructions or requested that Siemens proceed over objections that further work would incur additional costs.

Siemens IV, No. 26-282, 181 Fed. Cl. at 517 (alterations added).

Indeed, with respect to the merits of Siemens' claims, there are key factual allegations which set the Siemens IV, No. 26-282, case apart from the case currently before the court, Siemens III, No. 24-1313. In Siemens IV, No. 26-282, Siemens' Complaint "contain[ed] no allegations that the [Army] Corps misled Siemens, acted dishonestly, or otherwise engaged in conduct that improperly induced Siemens to incur additional costs." Siemens IV, No. 26-282, 181 Fed. Cl. at 517 (alterations added). In the case currently before the court, Siemens III, No. 24-1313, however, Siemens has alleged in its Second Amended Complaint that the DLA engaged in wrongful conduct which allegedly caused Siemens "to needlessly incur $2,835,412 in development costs." Moreover, the court in Siemens IV, No. 26-282, found that "[t]he nature of Siemens's putative implied-in-fact contract fits neatly under the applicable provision of the express contract, for which no breach is alleged" because the energy savings performance contract at issue in Siemens IV, No. 26-282, stated that "'[t]he Government will not be responsible for any costs incurred, such as proposal preparation costs or the costs incurred in conducting the Feasibility Study, unless a [task order] is awarded or authorized by the [contracting officer].'" Siemens IV, No. 26-282, 181 Fed. Cl. at 511, 516 (first alteration added; other alterations in original). In contrast, the IDIQ Contract at issue in the case currently before the court, Siemens III, No. 24-1313, permitted the ordering agency contracting officer to exercise discretion in deciding whether or not to reimburse

proposal preparation costs even if no task order was issued. Specifically, subsection H.5.1(D) of the IDIQ Contract at issue in Siemens III, No. 24-1313, stated: "The ordering agency will not be responsible for any costs incurred, such as proposal preparation costs or costs incurred in preparing the IGA, unless a TO is awarded or such costs are otherwise authorized for payment by the ordering agency CO." (emphasis added). Additionally, for the current review of defendant's Motion for Reconsideration in Siemens III, No. 24-1313, it is important to recognize that the Judge previously assigned to the above captioned and numbered case found that Siemens had plausibly stated a claim in Count II of Siemens' Second Amended Complaint for breach of an implied-in-fact contract because defendant "cannot assert that the IDIQ Contract does not apply to DLA's conduct but bars the implied-in-fact contract that attaches to procurements to treat offerors fairly." Siemens III, No. 24-1313, 2025 WL 3774760, at *6. Moreover, defendant stated in its Motion for Reconsideration that it "do[es] not seek reconsideration of the Court's holding on that issue" at this time. (alteration added). Therefore, just because the court in Siemens IV, No. 26-282, found that Siemens failed to plausibly state a claim in that case, No. 26-282, gives this court no reason to revisit, on defendant's current Motion for Reconsideration, the decision of the Judge previously assigned to the above captioned and numbered case, Siemens III, No. 24-1313, which denied defendant's RCFC 12(b)(6) motion to dismiss Counts II and III of Siemens' Second Amended Complaint, whether those counts appear to have a probability of success or not at this time.

In its Motion for Reconsideration, defendant also argues that the Judge previously assigned to the above captioned and numbered case, Siemens III, No. 24-1313, improperly relied upon Percipient.ai, Inc. v. United States, 104 F.4th 839, the vacated United States Court of Appeals for the Federal Circuit's panel opinion, as well as "two mistaken rulings" by other Judges of the United States Court of Federal Claims in Siemens I, No. 22-1870, and Siemens II, No. 22-698.[21] As discussed more fully above, in Percipient.ai, Inc. v. United States, 104 F.4th 839, a panel of the United States Court of Appeals for the Federal Circuit held that "the FASA task order bar does not preclude the Court of Federal Claims from exercising jurisdiction over Percipient's protest, which does not assert the wrongfulness of, or seek to set aside, any task order." Id. at 847. Subsequently, however, the United States Court of Appeals for the Federal Circuit issued an Order granting a rehearing en banc and vacating its earlier panel decision in the Percipient.ai case. See Percipient.ai, Inc. v. United States, 121 F.4th at 1312. In the Order granting a rehearing en banc in the Percipient.ai case, the United States Court of Appeals for the Federal Circuit stated that "[t]he panel opinion in Percipient.ai, Inc., v. United States, 104 F.4th 839 (Fed. Cir. 2024), is vacated" and requested the parties to file new briefs "limited to standing under 28 U.S.C. § 1491(b)(1)." Percipient.ai, Inc. v. United States, 121 F.4th at 1312 (alteration added). Significantly, in the Order granting a

[21] As indicated above, Siemens IV, No. 26-282, had not yet been decided at the time the December 31, 2025 Opinion and Order was issued by the Judge previously assigned to the above captioned and numbered case, Siemens III, No. 24-1313. Nor had Siemens IV, No. 26-282, been decided at the time defendant submitted its Motion for Reconsideration in the case currently before this court, Siemens III, No. 24-1313.

rehearing en banc in the Percipient.ai case, the United States Court of Appeals for the Federal Circuit also stated that it

> will not revisit and does not require additional briefing on the issues of task bar under the Federal Acquisition Streamlining Act of 1994 (FASA), 10 U.S.C. § 3406(f); subject matter jurisdiction under 28 U.S.C. § 1491(b)(1); and timeliness of claims under Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308 (Fed. Cir. 2007).

Percipient.ai, Inc. v. United States, 121 F.4th at 1312. A vacated Percipient.ai panel decision issued before the rehearing en banc is not precedential. See Hardy v. United States, 153 Fed. Cl. 287, 292 (2021) ("'[A] decision that has been vacated has no precedential authority whatsoever.'" (alteration in original) (quoting Durning v. Citibank, N.A., 950 F.2d 1419, 1424 n.2 (9th Cir. 1991); and citing 47 AM. JUR. 2D Judgments § 676 (2009))). Whether the vacated Percipient.ai panel decision carries persuasive value or guidance as dicta is a separate, and more difficult, question. As stated above, when the United States Court of Appeals for the Federal Circuit granted a rehearing en banc in the Percipient.ai case, the United States Court of Appeals for the Federal Circuit did not appear to take issue with the panel's earlier holding that the FASA task order bar did not apply to Percipient's bid protest, and, instead, explicitly stated that it "will not revisit and does not require additional briefing on the issues of task bar under the Federal Acquisition Streamlining Act of 1994 (FASA), 10 U.S.C. § 3406(f) . . . ." Percipient.ai, Inc. v. United States, 121 F.4th at 1312 (omission added). Moreover, in the final en banc decision, the United States Court of Appeals for the Federal Circuit did not reexamine the panel's earlier holding on the FASA task order bar issue, see Percipient.AI, Inc. v. United States, 153 F.4th at 1230 n.5, apparently leaving in place the panel's earlier determination that the FASA task order bar did not apply to Percipient's bid protest.

In its current Motion for Reconsideration in the above captioned and numbered case, defendant cites Avenal v. United States, 100 F.3d 933, 938 n.3 (Fed. Cir. 1996), for the broad proposition that "reliance on a vacated decision is misguided from the outset." In Avenal v. United States, the United States Court of Appeals for the Federal Circuit stated, briefly in a footnote:

> Plaintiffs' heavy reliance, particularly in their reply brief, on the panel opinion in Preseault v. United States, 66 F.3d 1167 (Fed. Cir. 1995), and particularly the role of federal law in defining state property rights, is of course not persuasive since that opinion has since been vacated by vote of the in banc court. See [Preseault v. United States,] 66 F.3d 1190 (Fed. Cir. 1995).

Avenal v. United States, 100 F.3d at 938 n.3 (alteration added). There is, however, a key distinction between the vacated Preseault v. United States panel decision and the vacated Percipient.ai panel decision relevant to the issue currently before the court in the above captioned and numbered case. In the Preseault v. United States case, the United States Court of Appeals for the Federal Circuit granted a rehearing en banc without limiting the scope of the rehearing en banc to a particular issue in the case, and,

ultimately, reversed and remanded the case to the trial court. See Preseault v. United States, 66 F.3d 1167 (Fed. Cir.), reh'g en banc granted, judgment vacated, 66 F.3d 1190 (Fed. Cir. 1995), and on reh'g en banc, 100 F.3d 1525 (Fed. Cir. 1996). In contrast, in the Percipient.ai case, as discussed above, the United States Court of Appeals for the Federal Circuit expressly limited the scope of the rehearing en banc to interested-party "standing under 28 U.S.C. § 1491(b)(1)" and expressly stated it "will not revisit and does not require additional briefing on" the FASA task order bar issue. Percipient.ai, Inc. v. United States, 121 F.4th at 1312. Moreover, in the final en banc decision, the United States Court of Appeals for the Federal Circuit did not reexamine the panel's previous ruling on the FASA task order bar and did not remand the case to the trial court. See Percipient.AI, Inc. v. United States, 153 F.4th at 1228.

Accordingly, the United States Court of Appeals for the Federal Circuit panel's interpretation of the FASA task order bar in Percipient.ai v. United States, 104 F.4th 839, albeit technically not binding, may have some persuasive value for this court as an indication of the United States Court of Appeals for the Federal Circuit's reasoning on the scope of the FASA task order bar. In a footnote in Siemens I, No. 22-1870, the court stated:

> In Percipient[.ai], the Federal Circuit granted the government's petition for rehearing en banc and vacated the panel opinion, reinstating the appeal. Percipient[.ai], 121 F.4th at 1312. The Federal Circuit limited the rehearing to Percipient[.ai]'s standing component and instructed that "[t]he court will not revisit and does not require additional briefing on the" FASA bar. Id. Thus, while the en banc court's order deprives the panel's "opinion of precedential effect," O'Connor v. Donaldson, 422 U.S. 563, 577 n.12, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), the panel opinion remains "at least persuasive" authority for our court, Crowson v. Washington County, 983 F.3d 1166, 1187 n.10 (10th Cir. 2020).

Siemens I, No. 22-1870, 177 Fed. Cl. at 172 n.7 (first, second, and third alteration added; fourth alteration in original). Similarly, in a footnote in Siemens IV, No. 26-282, the court stated that, "[a]lthough the [Percipient.ai] panel opinion has no precedential effect, it remains persuasive authority, given that the en banc Federal Circuit declined to reconsider the FASA issue." Siemens IV, No. 26-282, 181 Fed. Cl. at 514 n.1 (alterations added) (citing Radiance Techs. Inc. v. United States, 174 Fed. Cl. at 202 n.3). In Radiance Technologies Inc. v. United States, although procedurally a case different from the case currently under consideration, when discussing the FASA task order bar, the court stated:

> The Percipient.ai[, 104 F.4th 839] opinion made clear that the Federal Circuit was identifying a path that sidestepped FASA in a scenario not covered by its previous FASA task-order decisions, 22nd Century Technologies[, Inc. v. United States, 57 F.4th 993] and SRA International[, Inc. v. United States, 766 F.3d 1409]. A protest can avoid the task-order bar when "the requested relief would not alter [the agency's] issuance" of the task order. Percipient.ai, 104 F.4th at 851.

Radiance Techs. Inc. v. United States, 174 Fed. Cl. at 204 (first, second, and third alteration added; fourth alteration in original). In a footnote, the court in Radiance Technologies Inc. v. United States stated:

> On November 22, 2024, the Federal Circuit granted en banc rehearing in Percipient.ai. The panel opinion was vacated. Rehearing is limited to the issue of standing under 28 U.S.C. § 1491(b)(1). In granting rehearing, the Federal Circuit went on to note that the en banc court "will not revisit and will not require additional briefing on the issue[ ] of task bar under [FASA] . . . ." The implication is that if the full Federal Circuit reinstates the panel's standing decision, it will then reinstate the panel's FASA analysis. Therefore, even though the panel decision in Percipient.ai has been vacated, its FASA analysis will be applied to Radiance's claim, as there is no question that Radiance has statutory standing.

Radiance Techs. Inc. v. United States, 174 Fed. Cl. at 202 n.3 (alterations and omission in original; internal citations omitted). Moreover, in the vacated panel decision in Percipient.ai, when addressing the FASA task order bar, the United States Court of Appeals for the Federal Circuit stated:

> FASA provides that a "protest is not authorized in connection with the issuance or proposed issuance of a task or delivery order." 10 U.S.C. § 3406(f)(1). Consistent with the statutory focus on "issuance" and this court's decision in SRA International, Inc. v. United States, 766 F.3d 1409, 1413 (Fed. Cir. 2014), we interpret this language to mean that a protest is barred if it challenges the issuance of the task order directly or by challenging a government action (e.g., waiver of an organizational conflict of interest) whose wrongfulness would cause the task order's issuance to be improper.

See Percipient.ai, Inc. v. United States, 104 F.4th at 847. This further suggests that the United States Court of Appeals for the Federal Circuit's reasoning on the FASA task order bar issue, as expressed in the vacated panel decision, can be considered persuasive because it is not in conflict with the binding SRA International, Inc. v. United States case. Therefore, contrary to defendant's arguments in its Motion for Reconsideration, it was not improper, and it was not a manifest error of law, for the Judge previously assigned to the above captioned and numbered case, Siemens III, No. 24-1313, to review the reasoning in the United States Court of Appeals for the Federal Circuit's panel opinion in Percipient.ai, v. United States, 104 F.4th 839, in his December 31, 2025 Opinion and Order. See Banks v. United States, 84 Fed. Cl. at 292 ("The moving party must support its motion for reconsideration by a showing of exceptional circumstances justifying relief, based on a manifest error of law or mistake in fact."); see also 1100 W. Ewing Assoc., LLC v. United States, 139 Fed. Cl. at 25 (stating that a motion for reconsideration under either RCFC 54(b) or RCFC 59(a) "should only be granted upon the showing of 'exceptional circumstances justifying relief, based on manifest error of law or mistake in

fact.'" (quoting Webster v. United States, 93 Fed. Cl. at 679 (citing Henderson Cnty. Drainage Dist. No. 3 v. United States, 55 Fed. Cl. at 337))).

Finally, in its Motion for Reconsideration, defendant also asserts that the December 31, 2025 Opinion and Order, issued by the Judge previously assigned to the above captioned and numbered case, would increase the number of bid protests in the United States Court of Federal Claims, contrary to the intent of Congress. Defendant argues that the December 31, 2025 Opinion and Order is

> inconsistent with Congress's policy when enacting FASA to "revise and simplify the bid protest process with a view towards reducing the number of protests that are filed." S.REP. NO. 130-259, at 7, reprinted in 1994 U.S.C.C.A.N. 2604 (emphasis added). Treating a protestor's requested relief as dispositive would have the opposite effect. Indeed, such a test creates an exception to FASA's task order bar that allows a protestor to avoid the bar by limiting its requested relief to bid preparation costs, thereby obtaining judicial review of agency decisions that would otherwise be clearly "in connection with the issuance or proposed issuance of a task order." 10 U.S.C. § 3406(f).

(emphasis in original). Siemens, to the contrary, responds that "the Government improperly seeks to extend FASA beyond what Congress authorized when it barred protests 'in connection with the issuance or proposed issuance of a task order.'" (emphasis in Siemens' brief). Siemens continues, "[i]f Congress had intended the FASA bar to have the sweeping effect that the Government wishes, then it [Congress] would not have written the provision as it did." (alterations added). Siemens concludes, "[t]he Government's policy argument that the Court's holding here would increase the number of bid protests is a matter for Congress to decide, not this Court." (alteration added).

As an initial matter, as explained above, the Judge previously assigned to the above captioned and numbered case, Siemens III, No. 24-1313, did not hold that the remedy sought is always dispositive of whether the FASA task order bar applies, but rather stated that the remedy sought can inform whether the FASA bar applies. See Siemens III, No. 24-1313, 2025 WL 3774760, at *4 (citing SRA Int'l, Inc. v. United States, 766 F.3d at 1414). In accordance with the language of the statute at 10 U.S.C. § 3406(f), and United States Court of Appeals for the Federal Circuit discussions of the FASA task order bar issue, however, the salient question remains whether the challenged agency decision was "directly and causally connected" to the "issuance or proposed issuance" of a task order. See 10 U.S.C. § 3406(f); see also SRA Int'l Inc. v. United States, 766 F.3d at 1413; FYI – For Your Information, Inc. v. United States, 170 Fed. Cl. at 601 ("[I]n applying SRA International, the salient question is whether the challenged agency decision 'is directly and causally connected to [the] issuance of [a task order],' while recognizing that 'a temporal disconnect may, in some circumstances, help to support the non-application of the FASA bar[.]'" (first alteration added; other alterations in original) (citing SRA Int'l, Inc. v. United States, 766 F.3d at 1413)). Despite defendant's policy speculations regarding the legislative history of the FASA task order bar, "legislative

history is not the law" and "cannot displace what the law's terms clearly direct." Martin v. United States, 605 U.S. 395, 397 (2025). The FASA task order bar applies to protests "in connection with the issuance or proposed issuance" of a task order, not to all protests "in connection with" a task order, as defendant's broad interpretation would suggest. See 10 U.S.C. § 3406(f)(1) (emphasis added). Additionally, if the court were to accept defendant's broad interpretation of the FASA task order bar, other challengers, like Siemens in the above captioned and numbered case, could be left without a forum to try to recover any costs incurred while working in a situation such as the situations presented in Siemens I, No. 22-1870, Siemens II, No. 22-698, Siemens III, No. 24-1313, and Siemens IV, No. 26-282.[22] Also, defendant's current Motion for Reconsideration is not the appropriate time to raise, for the first time, a public policy argument. See Alpha I, L.P. ex rel. Sands v. United States, 86 Fed. Cl. at 573.

As indicated above, in Banks v. United States, a Judge of the United States Court of Federal Claims stated that, in general, "[t]he moving party must support its motion for reconsideration by a showing of exceptional circumstances justifying relief, based on a manifest error of law or mistake in fact," which is critical regarding how to view the current Motion for Reconsideration filed by defendant in Siemens III, No. 24-1313. See Banks v. United States, 84 Fed. Cl. at 292 (alteration added). Defendant has failed to do so here. Ultimately, defendant's Motion for Reconsideration is an attempt to rehash the same arguments that have been considered and rejected in earlier proceedings by the Judge previously assigned to the above captioned and numbered case, Siemens III, No. 24-1313, which is insufficient to support a motion for reconsideration. See Sikorsky Aircraft Corp. v. United States, 171 Fed. Cl. at 332-33 ("The government may not now invoke RCFC 54(b) to revisit arguments that have been previously raised and, in due course, rejected." (citing Haggart v. United States, 133 Fed. Cl. at 573; and Haddad v. United States, 152 Fed. Cl. at 18 n.12)). As explained in the December 31, 2025 Opinion and Order issued by the Judge previously assigned to the above captioned and numbered case, Siemens III, No. 24-1313, and now reiterated in this Opinion on defendant's Motion for Reconsideration, FASA does not bar Counts II or III of Siemens' Second Amended Complaint because Siemens' claims are not "directly and causally related" to the "issuance or proposed issuance" of the Goodfellow Air Force Base task order under the limitations in the statute at 10 U.S.C. §3406(f) and articulated by previous court decisions. See SRA Int'l, Inc. v. United States, 766 F.3d at 1413. Contrary to defendant's assertions

[22] Although it would not alter the outcome in the above captioned and numbered case, Siemens III, No. 24-1313, the court notes that offerors seeking recovery of bid preparation and proposal costs incurred while working on a task order procurement may file a protest at the GAO in some cases, provided that the task order at issue is valued in excess of $35,000,000.00 for defense agencies, see 10 U.S.C. § 3406(f)(1)(B), or valued in excess of $10,000,000.00 for civilian agencies. See 41 U.S.C. § 4106(f)(1)(B); see also 48 C.F.R. § 33.104 (2025) ("If the GAO determines that a solicitation for a contract, a proposed award, or an award of a contract does not comply with a statute or regulation, the GAO may recommend that the agency pay to an appropriate protester the cost, exclusive of profit, of filing and pursuing the protest, including reasonable attorney, consultant, and expert witness fees, and bid and proposal preparation costs.").

in its Motion for Reconsideration, the Judge previously assigned to the above captioned and numbered case, Siemens III, No. 24-1313, did not err when considering the remedy sought by Siemens as relevant to whether the FASA task order bar applies. Nor did the Judge previously assigned to the above captioned and numbered case err when reviewing the reasoning articulated by the United States Court of Appeals for the Federal Circuit in the vacated Percipient.ai, Inc. v. United States, 104 F.4th 839, panel decision, as it relates to the FASA task order bar, which the United States Court of Appeals for the Federal Circuit did not revisit on its rehearing en banc. See Percipient.AI, Inc. v. United States, 153 F.4th at 1230 n.5. As indicated above, the court has broad discretion to determine whether or not to grant reconsideration under RCFC 54(b). See Yuba Nat. Res., Inc. v. United States, 904 F.2d at 1583; see also Loveridge v. United States, 150 Fed. Cl. at 126. On the record before the court in the above captioned and numbered case, Siemens III, No. 24-1313, the court finds that justice does not require reconsideration of the December 31, 2025 Opinion and Order, issued by the Judge previously assigned to the above captioned and numbered case, which denied defendant's motion to dismiss Counts II and III of Siemens' Second Amended Complaint. See Loveridge v. United States, 150 Fed. Cl. at 126.

## CONCLUSION

For the reasons described above, defendant's Motion for Reconsideration is **DENIED**.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**